MCC:AKF:all/2001V00334

ORIGINAL

FILED
HARRISBURG

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JUN 1 5 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

JUKEN WASHINGTON GORDON,
        Plaintiff

    v.

N. GONZALEZ, et al.,
        Defendants

:
:
:
:
:
:
:
:

Civil No. 1:CV-01-0331

(Judge Rambo)

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff is Juken Washington Gordon, an inmate currently incarcerated at the Allenwood United States Penitentiary at White Deer, Pennsylvania. On February 22, 2001, Gordon filed a Bivens[1] complaint against the following Bureau of Prisons ("BOP") employees at the United States Penitentiary at Lewisburg, Pennsylvania ("USP Lewisburg"): N. Gonzalez, Lieutenant; S. Puckey, Senior Officer Specialist; B. Shuman, ; J.A. Candelora, Senior Officer Specialist; G. Shuck, Senior Officer Specialist; M. Peoria, Physician's Assistant ("P.A.");[2] and the United States. Gordon's complaint alleges that he was assaulted by BOP employees and that BOP medical personnel failed to provide medical care for his injuries after the alleged assault. Gordon seeks "medical relief, declaratory and injunction relief, as well as $5,000,000.00 dollars in compensatory and punitive damages," attorney's fees and costs and "any further relief this Honorable Court deems just proper (sic)."

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2] M. Peoria is a P.A. employed at USP Lewisburg who treated Gordon after the use of force incident of September 9, 2000. In Gordon's complaint, he refers to P.A. Peoria as "Dr. Poeria."

On June 5, 2001, a motion to dismiss or, in the alternative, for summary judgment, was filed on behalf of defendants. This brief is submitted in support of that motion in accordance with M.D. Pa. Local Rule 7.5.

## II.   Statement of Facts

On Saturday, September 9, 2000, at approximately 11:20 a.m., several staff members of USP Lewisburg were monitoring inmates departing the main dining hall upon completion of the weekend brunch meal. The "last call" announcement had been made approximately 15 minutes before, and the serving lines were closed. No other inmates were permitted to enter the dining hall. Exh. 1, ¶¶1,2; Exh. 2, ¶2.

Gordon approached staff and demanded to enter the dining hall to eat. He was informed that the dining hall was closed. Gordon became agitated and left the area. Exh. 1, ¶2; Exh. 2, ¶2.

Gordon subsequently returned and began to argue with defendant Gonzalez. Lt. Gonzalez ordered Gordon to return to his housing unit; however, Gordon continued to argue, demanding that he be fed his lunch. Lt. Gonzalez directed Gordon to come with him to the Lieutenant's Office and asked defendant Puckey to accompany him. Exh. 1, ¶2; Exh. 2, ¶2.

Once inside the Lieutenant's Office, Gordon became loud and agitated. Gordon was ordered to place his hands on the wall of the office and submit to hand restraints. Gordon complied with the order to put his hands on the wall; however, as Officer Puckey put a hand restraint on Gordon's left hand, Gordon began to resist and

2

shouted "Fuck you...fuck you, you are not locking me up."   Gordon attempted to pull away from Officer Puckey, clenched his fist, and lunged towards Lt. Gonzalez, in an apparent attempt to assault him. Exh. 1, ¶3; Exh. 2, ¶3.

Officer Puckey still had control of Gordon's left hand and used a leg sweep maneuver to take Gordon to the floor and regain control of him.   Once Gordon was on the floor, he continued to resist, so the defendants called for additional assistance. Exh. 1, ¶3; Exh. 2, ¶¶3,4.

Defendants Shuck, Candelora and Shuman responded to Officer Puckey's call for assistance.   When the officers arrived, they found staff struggling to restrain Gordon, who was on the floor.   Gordon was kicking and attempting to resist staff efforts to apply restraints.   The officers assisted in attempting to hold Gordon still and applying restraints.   Once Gordon was restrained, due to his efforts to assault staff and continued combativeness, he was carried to the Special Housing Unit, where he was placed in ambulatory restraints.   Exh. 1, ¶4; Exh. 2, ¶4; Exhs. 4,5,6.

At 11:53 a.m. that same day, Gordon was examined by defendant Peoria and found to have sustained no visible injuries. Exh. 3, ¶2, p.5.   P.A. Peoria advised Gordon of the procedure for obtaining a copy of the Inmate Injury Assessment Form and advised him to follow up through sick call procedures as needed.   Exh. 3, ¶2.   Lt. Gonzalez was also examined by Health Services staff and treated for knee strain.   Exh. 1, ¶4.

3

As a result of this incident, Gordon received a disciplinary incident report for Threatening, Attempted Assault, and Refusing an Order. Exh. 2, ¶4, p.3. A disciplinary hearing was held on September 12, 2000. The Discipline Hearing Officer concluded that Gordon had committed the prohibited act of Attempted Assault and sanctioned him to 27 days loss of Good Conduct Time, 30 days disciplinary segregation, a disciplinary transfer, and 180 days loss of commissary and telephone privileges. Exh. 2, ¶5, p.4.

In December, 2000, three months after the September, 2000, use of force incident, Gordon was seen at the Allenwood United States Penitentiary in White Deer, Pennsylvania, by an orthopedic specialist for complaints of lower back pain. At that time, Gordon stated that before he was incarcerated, he was involved in an automobile accident and was subsequently treated for back pain. Gordon reported that "his pain never really went away since that time and kind of lingered, then it got worse." Gordon also reported that he "can't relate it to any episode that made it worse." While Gordon did mention the September, 2000, incident at USP Lewisburg, the examining physician noted that as a result of the fall, Gordon had "really no radicular symptoms, or in my estimation, no significant change." Exh. 3, ¶4, p.3,4.

### III.  Question Presented

1.  Should Gordon's use of force claim be dismissed as it does not rise to the level of a constitutional violation?

2.  Should Gordon's claim that he was placed in a "dry cell" in ambulatory restraints for 4 or 5 hours be dismissed as Gordon fails to state a claim of constitutional magnitude?

4

3.   Should Gordon's allegation that he was denied appropriate medical care be dismissed as Gordon has failed to state an Eighth Amendment claim?

4.   Should Gordon's tort action be dismissed as Gordon has failed to meet his burden of proof?

5.   Should the United States' motion for summary judgment be granted as no genuine issue of material fact exists for trial?

Proposed answers in the affirmative.

## IV.   Argument

### A.   The Bivens Action[3]

### 1.   Gordon's use of force claim does not rise to the level of a constitutional violation.

The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id.

Resolution of an Eighth Amendment claim therefore "mandates an inquiry into a prison official's state of mind." Fuentes v. Wagner, 206 F.3d 335 (3rd Cir. 2000)(citing Wilson v. Seiter, 501 U.S. 294, 299 (1991)). First, it must be determined if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298. If the answer is no, the inquiry is finished. However, if the deprivation is

---

[3]Gordon has exhausted his available administrative remedies on the issues raised in this Bivens action through the Bureau of Prisons' Administrative Remedy procedure.

sufficiently serious, it must be determined if the officials acted with a sufficiently culpable state of mind. The court must determine "if they were motivated by a desire to inflict unnecessary and wanton pain. What is necessary to establish an unnecessary and wanton infliction of pain . . . varies according to the nature of the alleged constitutional violation." Fuentes, 206 F.3d at 345 (citing Hudson v. McMillian, 503 U.S. 1, 5 (1992)). When an excessive force claim is made in the context of a prison, the subjective inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. The objective inquiry is whether the inmate's injury was more than de minimis. Id. at 9-10.

The force at issue in this complaint, i.e., the "leg sweep" utilized by staff to take Gordon to the floor, was used in an effort to regain control of Gordon when he became disruptive and attempted to strike a staff member. When Gordon refused to cooperate with staff even after he was on the floor, additional staff members were called upon to assist with placing him in restraints and taking him to the Special Housing Unit. See Exh. 1, ¶3,4; Exh. 2, ¶4, Exhs. 4,5,6.

When Gordon was examined by Health Services staff in the Special Housing Unit, he was found to have no injuries – not even any evidence of minor cuts or bruises, thus no medical attention was required. Gordon's total lack of visible injuries is completely inconsistent with his exaggerated allegations that he was "brutally" jumped on and assaulted, kicked and punched by

6

fifteen BOP staff members.  He has since complained of back pain, but has been inconsistent in stating that the pain was a result of the use of force or from a pre-incarceration injury. <u>See</u> Exh. 3, ¶¶2,3,4, pp.3,4,5.

In December, 2000, only three months after the September, 2000, use of force incident, Gordon was seen by an orthopedic specialist for complaints of lower back pain.  Gordon reported that he was involved in an automobile accident before he was incarcerated and was subsequently treated for back pain.  Gordon reported that "his pain never really went away since that time and kind of lingered, then it got worse."  Gordon also reported that "he can't relate it to any episode that made it worse."  While Gordon did mention the September, 2000, incident at USP Lewisburg, the examining physician noted that as a result of the fall, he had "really no radicular symptoms, or in my estimation, no significant change."  <u>See</u> Exh. 3, ¶4, pp. 3,4.

Accordingly, Gordon fails to prove either the subjective or objective component necessary to succeed on an excessive use of force claim.  As set forth above, the force was used in the context of regaining control of Gordon as he broke away from staff attempting to restrain him and in trying to prevent him from assaulting a staff member.  Clearly the staff member's action in taking Gordon to the floor was done "in a good faith effort to . . . restore discipline" as set forth in <u>Hudson</u>, 503 U.S. at 6. Objectively, Gordon fails to prove that he suffered any injuries as a result of the incident.  While Gordon alleges that he suffered a

back injury, he has provided contradictory information to medical staff that the injury was the result of a pre-incarceration automobile accident. See Exh. 3, ¶4, pp. 3,4.

> **2. Gordon fails to state a claim of constitutional magnitude with regard to his allegations that he was placed in a "dry cell" in ambulatory restraints for 4 or 5 hours.**

When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with "deliberate indifference" to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The objective inquiry is whether the inmate was "denied the minimal measure of life's necessities." Hudson, 503 U.S. at 9.

Given that Gordon had just created a disruption in the main corridor of the institution, become increasingly disruptive when he was removed to the Lieutenant's office, attempted to assault staff, and continued to resist even after he was taken to the floor, it certainly is reasonable for Gordon to have been left in ambulatory restraints for a short period of time after he was placed in the Special Housing Unit. Therefore, Gordon has failed to prove that his brief confinement in a dry cell rises to the level of a constitutional violation.

> **3. Gordon has failed to state an Eighth Amendment claim with regard to his allegation that he was denied appropriate medical care.**

Like use of force claims, medical claims based upon the Cruel and Unusual Punishment Clause have both objective and subjective component, as well. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy

8

the Eighth Amendment objective component. <u>Id.</u>   The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."   <u>Id.</u>

In the context of medical care, the relevant inquiry is whether the defendant was (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element).   <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3rd Cir. 1987); <u>West v. Keve</u>, 571 F.2d 158, 161 (3rd Cir. 1979).   Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation, nor can disagreement over a prison physician's medical judgment.   <u>White v. Napoleon</u>, 897 F.2d. 103, 108-10 (3rd Cir. 1990).

The objective component of an Eighth Amendment claim, <i>i.e.</i>, whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency.   <u>Hudson v. McMillan</u>, 503 U.S. 1, 10 (1992).   A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.   <u>Johnson v. Busby</u>, 953 F.2d 349, 351 (8th Cir. 1991); <u>Monmouth County Correctional Institution v. Lanzaro</u>, 834 F.2d at 347; <u>Archer v. Dutcher</u>, 733 F.2d 14, 16-17 (2nd Cir. 1984); <u>Todaro v. Ward</u>, 565 F.2d 48, 52 (2nd Cir. 1977).   Not every injury or illness invokes constitutional protection; only those that are serious have that effect.

Defendant Peoria, a Physician Assistant at USP Lewisburg, is the only named defendant involved in providing medical care for Gordon. P.A. Peoria was called to examine Gordon in the Special Housing Unit, after Gordon's involvement in the September 9, 2000, incident. P.A. Peoria examined Gordon at 11:53 a.m., less than one-half hour after the use of force incident occurred.

P.A. Peoria noted at the time of the examination that Gordon was alert and ambulatory and in no obvious distress. The examination revealed no evidence of any recent traumas. P.A. Peoria noted no deformities or tenderness to palpitation on Gordon's back and no evidence of traumatic lesions or tenderness on Gordon's face, hands, thorax, or legs. The complete lack of any physical injury or evidence of a struggle is completely inconsistent with Gordon's version of the use of force incident. P.A. Peoria loosened Gordon's ankle restraints, but no other medical attention was required. (See Exh. 3, ¶2). Gordon was instructed to follow up at sick call if he had any further complaints.

Gordon goes on in his complaint to discuss other treatment he subsequently received for his complaints of chronic back pain; however, he makes no further allegations concerning any involvement by P.A. Peoria in any of those treatment decisions. The only allegation against P.A. Peoria occurs on the day of the use of force, September 9, 2000. As such, Gordon has clearly failed to state a cause of action against P.A. Peoria for deliberate indifference to a serious medical need.

10

**B.    The Tort Action[4]**

1.    **If Gordon's claim were to be construed as an FTCA action, Gordon has failed to meet his burden of proof.**

While it appears this action should be construed solely as a <u>Bivens</u> action, Gordon also names the United States of America as a defendant. Under the Federal Tort Claims Act ("FTCA"), the Court must determine whether the United States is subject to tort liability by applying the substantive law of the state "where the act or omission occurred." 28 U.S.C. § 2674. In such an action, the law of the place where the alleged act or omission occurred is to be applied. 28 U.S.C. § 1346(b); <u>Smith v. United States</u>, 437 F. Supp. 1004, 1005 (E.D. Pa. 1977). In <u>United States v. Muniz</u>, 374 U.S. 150 (1963), the Court held that the United States may be found liable only to the extent that a private individual would be liable under the applicable state law. <u>See Rodriquez v. United States</u>, 823 F.2d 735, 739 (3rd Cir. 1987). Because the alleged negligent act or omission occurred in the Commonwealth of Pennsylvania, Pennsylvania law governs the disposition of this matter.

With respect to the burden of proof and quantum of proof, the governing law is also that of the state in which the alleged tortious conduct took place. <u>Baum v. United States</u>, 541 F. Supp. 1349,1351 (M.D. Pa. 1982). Pennsylvania law requires a

---

[4]To the extent that the complaint is interpreted as including a claim against defendants pursuant to the Federal Tort Claims Act, there is no evidence that Gordon has exhausted the administrative tort claim procedure available to him pursuant to 28 U.S.C. § 2675(a).

**preponderance of the evidence** in favor of plaintiff's basic propositions. Id.; Vlases v. Montgomery Ward & Co., 377 F.2d 846, 851 (3rd Cir. 1967). Additionally, in a civil case, the plaintiff has the burden of proving his case by a fair preponderance of evidence. Morgan v. Wilkinson, 606 F. Supp. 564 (M.D. Pa. 1985).

In order to state a *prima facie* case of tortious negligence in Pennsylvania, the plaintiff must show: (1) the existence of a legal duty from the defendant to the plaintiff; (2) a negligent breach of that duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injuries. Yosuf v. United States, 642 F. Supp. 415, 427 (M.D. Pa. 1986); Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd 306 F.2d 713 (3rd Cir. 1962). In this case, Gordon has failed to meet his burden. Although the Bureau of Prisons owed Gordon a duty to provide a safe environment and appropriate medical care, the Bureau met that duty.

It should also be stressed that in a medical malpractice action, Pennsylvania law requires that the plaintiff show the defendant failed to exercise reasonable care. In order to meet this burden, the plaintiff is required to introduce expert medical testimony concerning the medical material at issue in the complaint. Brannan v. Lankenau Hospital, 490 Pa. 588, 417 A.2d 196 (1980); Geibel v. U.S.A., 667 F. Supp. 215 (1987), aff'd, 845 F.2d 1011 (3rd Cir. 1988). Gordon has failed to provide any medical expert evidence that he sustained a back injury in the use of force incident on September 9, 2000. On the contrary, the orthopedic

12

consultant's report that Gordon attached to his complaint clearly quotes Gordon as admitting that he had experienced a back injury in a pre-incarceration automobile accident.   Further, the orthopedic consultant specifically noted that he felt the inmate experienced no significant change in his injury as a result of the September 9, 2000, incident.  <u>See</u> Exh. 3, p.4.  Therefore, Gordon  has failed to satisfy his burden of proof as required in an FTCA case, and the United States of America should be dismissed as a defendant.

### C.  **Summary Judgment is Appropriate Because There are No Genuine Issues of Material Fact.**

Rule 56(e) provides for the entry of summary judgment when the moving party demonstrates, by affidavit or otherwise that there exists no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.   In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986), the Supreme Court stated that a "summary judgment motion with affidavits . . . should be granted <u>so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c) is satisfied</u>".  477 U.S. at 323.  (Emphasis added).

When considering a motion for summary judgment, the Court must determine if there are any genuine issues of material fact. Fed. R. Civ. P. 56; <u>Meyer v. Riegel Products Corp.</u>, 720 F.2d 303 (3d Cir. 1983), <u>cert. denied</u>, 104 S. Ct. 2144 (1984).  An issue is "genuine" only if the evidence is such that a reasonable juror could return a verdict for the nonmoving party.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  If the evidence is

13

"merely colorable" or "not significantly probative", summary judgment may be granted.  Id.  Where the record, taken as a whole, could not "lead a rational trier of fact to find for the non-moving party, summary judgment is proper."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1986).  See also Hankins v. Temple University, 829 F.2d 437, 440 (3d Cir. 1987).  The responding party may not rest on the allegations of his pleading but must present by affidavit or otherwise, specific facts sufficient to create a genuine issue of material fact.  Fed. R. Civ. P. 56(e); Sunshine Books Ltd. v. Temple University, 697 F.2d 90 (3d Cir. 1982).

Gordon's claims regarding use of force, his placement in a dry cell in ambulatory restraints, and the medical care he received should be dismissed as they do not rise to the level of constitutional violations.  Further, should the complaint be interpreted as a tort action, Gordon's claims should be dismissed as he has failed to meet his burden of proof.  In the alternative, the defendants' motion for summary judgment should be granted.

As is seen by the Statement of Facts and is more fully explained above, there is no genuine issue of material fact as the evidence is such that no reasonable juror could find that defendants violated any constitutional right, was deliberately indifferent to Gordon's medical needs, or failed to meet their "duty" under the FTCA to provide appropriate medical care.

### V.  Conclusion

WHEREFORE, for the reasons stated above, the complaint must be dismissed or, in the alternative, summary judgment granted

in favor of defendants with a certification that any appeal would
be deemed frivolous, lacking in probable cause, and not taken in
good faith.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

ANNE K. FIORENZA
United States Attorney
ANITA L. LIGHTNER
Paralegal Specialist
228 Walnut Street, 2nd Floor
Harrisburg, PA 17108
(717)221-4482

Dated:    June 15, 2001

15

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JUKEN WASHINGTON GORDON,     :
          Plaintiff     :
                             :    Civil No. 1:CV-01-0331
          v.          :
                             :    (Judge Rambo)
N. GONZALEZ, et al.,        :
          Defendants    :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 15th day of June, 2001, she served a copy of the attached

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Juken Washington Gordon
Reg. No. 05373-088
USP Allenwood
P.O. Box 3000
White Deer, PA 17887


ANITA L. LIGHTNER
Paralegal Specialist