(39)

9-14-01

MA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUKEN WASHINGTON GORDON,   :

          Plaintiff         :  **CIVIL ACTION NO. 1:CV-01-0331**

        v.           :

N. GONZALEZ, <u>et al.</u>,     :  **(Judge Rambo)**

          Defendants    :

FILED
HARRISBURG, PA

SEP 1 3 2001

MARY E. D'ANDREA, CLERK
Per _____ /s/
Deputy Clerk

## M E M O R A N D U M

       Before the court is a motion to dismiss or, in the alternative, for summary judgment filed by defendants on June 5, 2001 and a motion to amend or supplement pleading filed by the plaintiff on August 6, 2001. Because the court finds that plaintiff would not prevail on the claim he seeks to add, plaintiff's motion will be denied.  Because plaintiff failed to exhaust two of his three claims, those claims will be dismissed.  Summary judgment will be granted in favor of defendants in regards to the remaining claim.

## I.    <u>Background</u>

Plaintiff, Juken Washington Gordon, a federal prisoner confined at all times relevant to the instant complaint at the United States Penitentiary at Lewisburg, Pennsylvania, ("USP Lewisburg") filed this *Bivens*-styled action[1] pursuant to 28 U.S.C. § 1331.[2]  Gordon completed this court's form application to proceed *in forma pauperis* and authorization to have funds deducted from his account.  (Docs. 2-3.)  The Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), imposed new obligations on prisoners who file suit in federal court and wish to proceed *in forma pauperis* under 28 U.S.C. § 1915, *e.g.*, the full filing fee ultimately must be paid (at least in a non-habeas suit).  This court granted plaintiff's application to proceed *in forma pauperis* by order (Doc. 7) dated April 2, 2001. Plaintiff subsequently paid the fee in full.

---

[1]    *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

[2]    Gordon is currently confined at Allenwood United States Penitentiary ("USP Allenwood") at White Deer, Pennsylvania.

2

Plaintiff's instant complaint was filed on February 22, 2001.  Named as defendants are the following Federal Bureau of Prisons ("BOP") employees at USP Lewisburg:  N. Gonzalez, Lieutenant; S. Puckey, Senior Officer Specialist ("SOS"); B. Shuman, SOS; J.A. Candelora, SOS; G. Shuck, SOS; Officer Messrs; M. Peoria, Physician's Assistant ("P.A.");[3] and the United States.

Plaintiff did not utilize the standard §1331 form that is provided by this Court, but instead filed his own typed complaint.  (Doc. 1, Complaint.)  Gordon's complaint states he is seeking "[r]emedy of the deprivation of his liberty interest created by Federal BOP Regulations in remaining free from wronful [*sic*] cruel and unusual punishment and fales [*sic*] imprisonment."  (*Id.*, p. 1.)  Plaintiff asserts there was a "[v]iolation of due process and imposition of an atypical and significant hardship in relation to the ordinary living  in prison at USP Lewisburg in [*sic*] September 9, 2000."  (*Id.*)  Although Gordon did not specifically state his claim(s), he did provide facts in support of his

---

3      In his complaint, plaintiff refers to P.A. Peoria as "Dr. Poeria."  Peoria is a physician's assistant employed at USP Lewisburg who treated Gordon after the use of force incident of September 9, 2000.  (Doc. 22, Brief in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, n.2.)

3

"*Bivens* Action". (*Id.*)  Based on the facts, Gordon appears to be making an

excessive use of force claim and that he was denied appropriate medical care

both  in reliance of the Eighth Amendment.[4]  As to relief sought, plaintiff seeks

"medical relief, declaratory and injunction relief, as well as $5,000,000.00

dollars in compensatory and punitive damages," attorney's fees and costs and

any other relief that the court deems proper.  (*Id.*)   Along with his complaint,

plaintiff provided copies of his grievances in an effort to demonstrate

exhaustion.  (Doc. 1, Exhibit A-C)  However, in his grievances, plaintiff only

---

4        Defendants in their motion to dismiss or, in the alternative, for summary judgment
also presented defenses to any tort claims in case this court construed the instant
complaint to be a claim under the Federal Torts Claim Act (FTCA).  Defendants expressed
their concern that the claim would be construed as a tort claim because the United States
was named as a defendant.  Plaintiff clearly states throughout his complaint that his
complaint is a *Bivens* action.  The facts provided by Gordon support his allegations of an
excessive use of force claim on September 9, 2000 and failure to provide medical care as
a result of the alleged assault.  Although pleadings by pro se litigants are to be liberally
construed, *Haines v. Kerner*, 404 U.S. 519 (1972), Gordon made no allegations in his
complaint regarding defendant United States as well as no allegations of a tort claim, and
clearly stated he was filing a *Bivens* action.
        Even if plaintiff did file a FTCA claim, it would be dismissed for failure to
demonstrate exhaustion of administrative remedies.  In response to defendants' motion to
dismiss, plaintiff attempts to raise the tort claim that defendants eluded to as a possible
claim.  Plaintiff states that he filed an administrative tort claim dated February 18, 2001,
four days prior to the filing of the instant complaint.  (Doc. 30, Opposing Brief, p. 12.)
Plaintiff states that on March 9, 2001, he was informed that it would take six months to
"consider and adjudicate" his claims.  Therefore, plaintiff is currently seeking administrative
remedies regarding any potential tort claim and such a claim would not be properly before
this court at this time.

raises the excessive use of force claim and not the medical claim or dry cell claim.[5]

In their motion to dismiss or, in the alternative, for summary judgment, defendants contend that Gordon's excessive use of force claim does not rise to the level of a constitutional violation. (Doc. 22, p. 5.) Defendants further assert that Gordon has failed to state an Eighth Amendment claim regarding the denial of appropriate medical care or his placement in a "dry cell". (*Id.*) Defendants state that summary judgment is appropriate because there are no genuine issues of material fact. (*Id.*)

In addition to trying to raise his tort claim for the first time, plaintiff also attempts to raise a claim regarding his disciplinary hearing in his opposing brief. (Doc. 30, p. 3-4.) Defendants noted that Gordon's opposition brief included an allegation not raised in his complaint: that his disciplinary hearing held on September 20, 2000 was improper in that the disciplinary hearing officer ("DHO") allegedly refused to review a surveillance video tape, and that

---

5    In fact, the only reference plaintiff makes to his medical care is that he states in his administrative appeal that he "suffer [sic] pain to my back and neck which at present time I am taking medication . . . ." (*Id.*)

Gordon did not waive his right to have a staff member present at the disciplinary hearing.  (Doc. 37, p. 3.)  Defendants stated "[i]f he wishes to raise this new claim, he should petition the Court to amend his complaint." (*Id.*)  In response to defendants suggestion, plaintiff filed a currently pending motion to amend his complaint.  (Doc. 38.)

The motion to dismiss or, in the alternative, for summary judgment, is now ripe for consideration.   Defendants' motion for summary judgment is well taken and will be granted as to plaintiff's excessive use of force claim. Plaintiff's remaining claims will be dismissed for failing to exhaust his administrative remedies.

## II.    **DISCUSSION**

Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The Supreme Court has ruled that Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  The Court further stated that "Rule 56 (e). . .requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324.  The Supreme Court in *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986), has held that the opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings.  *See Celotex*, 477 U.S. at 325.  Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. *Liberty Lobby*, 477 U.S. at 256-57.

With these principles in mind, the court will first set forth the allegations in the complaint and then the materials submitted by defendants to attempt to demonstrate that defendants are entitled to judgment.

In his instant complaint, plaintiff states that on September 9, 2000, defendants Gonzalez and Puckey refused to allow him to eat in the mess hall. Plaintiff contends that they then allowed a "[S]panish inmate" in the mess hall to eat. Plaintiff asserts that he inquired as to why they would not allow him to eat. Gordon states that the defendants begin using racial slurs and profanity, and told him they could do whatever they wanted. (Doc. 1, p. 2.)

Plaintiff contends that Gonzalez told Puckey to take him to Gonzalez's office, Puckey told him to place his hands on the wall, and when he placed his hands on the wall, Puckey swept his legs away from under plaintiff and he fell to the ground. Plaintiff states the defendants begin kicking and punching him, said they were going to kill him, and continued using racial slurs and profanity. Plaintiff further contends that either Gonzalez or Puckey called for back up and the remaining named defendants as well as other unknown correctional officers ran into Gonzalez's office and jumped on his back. Plaintiff asserts that he suffered injuries to his back and neck due to the kicking, punching, and jumping down on his back. (*Id.*)

8

Gordon states he was then taken to lock down and placed in a "dry cell," i.e. cell without water or toilet, for four to five hours.  Plaintiff states that he was placed in hand cuffs and leg irons during that time frame.  Plaintiff concedes that defendant Peoria came to his cell within 45 minutes of his placement.  Plaintiff alleges that he told Peoria he was feeling "a lots [sic] of pain to his back and neck due to the brutal physical force . . . ."  Plaintiff states that Peoria did not prescribe any medication for his pain.  Gordon states he requested to see medical staff on September 10, 2000, but was not seen until September 12.  Plaintiff states he was seen by Factora who prescribed pain medication.  (*Id.,* p. 2-3.)

Plaintiff states he was subsequently transferred to USP Allenwood on November 8, 2000.  Gordon states he has continued to receive pain medication since his arrival at USP Allenwood.  Plaintiff states he was seen by an orthopedic  specialist on December 19, 2000.  Gordon contends Dr. Reish told plaintiff he had a bad disc, but could not receive surgery.  Dr. Reish recommended plaintiff receive an extra mattress, bottom bunk and continue

medication.  Plaintiff states that Dr. Pannell also ordered a medium back brace on January 9, 2001 and placed Gordon on Naproxen instead of Ibuprofen.  (*Id.*, p. 3-4.)

In his opposing brief, plaintiff states he was transferred by the DHO after a hearing.  Gordon states the DHO dismissed two of the charges against him but found him guilty of attempted assault.  Gordon alleges he asked the DHO to review the surveillance videotape but the DHO refused.  Gordon also contends that he did not waive any right to have a staff member represent him at the hearing.  (Doc. 30, p. 3-4.)  Gordon wishes to amend his complaint so he can include a claim for improper disciplinary hearing which violated his due process rights when the DHO refused to review the videotape and violated BOP policy when plaintiff was not represented by a staff member.  (Doc. 38, Motion to Amend.)

To pierce these allegations, the defendants have submitted a statement of material facts (Doc. 23), supported by documentation and declarations of named defendants (Doc. 24), as well as a brief in support of motion to dismiss or, in the alternative summary judgment (Doc. 22) and a reply brief (Doc. 37).

10

Defendants contend that plaintiff attempted to assault Gonzalez and the leg sweep was used in an effort to regain control of Gordon.  Defendants further assert that plaintiff received adequate medical care.

Defendants Gonzalez and Puckey state that on Saturday, September 9, 2000, at approximately 11:20 am, several staff members of USP Lewisburg were monitoring inmates departing the main dining hall upon completion of the weekend brunch meal.  The "last call" announcement had been made approximately 15 minutes before and the serving lines were closed.  (Doc. 24, Exh. 1, ¶¶1,2; Exh. 2, ¶ 2.)

Defendants Gonzalez and Puckey state that plaintiff approached and demanded to enter the dining hall to eat.  Defendants contend that when Gordon was informed the dining hall was closed, he became agitated and initially left the area.  (Id., Exh. 1, ¶2; Exh. 2, ¶2.)  Defendants state that Gordon returned and began to argue with Gonzalez.  Gonzalez ordered Gordon to return to his housing unit.  Defendants assert that Gordon continued to argue that he should get his lunch.  Gonzalez states he directed

Gordon to come with him to his office and asked defendant Puckey to accompany him. (*Id.*)

Defendants contend that once they got inside Gonzalez's office, Gordon became loud and agitated. Defendants assert they ordered plaintiff to place his hands on the wall of the office and submit to hand restraints. Defendants state that Gordon initially complied with the order to put his hands on the wall; but, when Puckey put a hand restraint on Gordon's left hand, Gordon began to resist, shouted profanities and stated "you are not locking me up." Defendants contend that Gordon attempted to pull away from Puckey, clenched his fist, and lunged towards Gonzalez in an apparent "attempt to assault him." (Exh. 1, ¶3; Exh. 2, ¶3.)

Defendants allege that Puckey still had control of Gordon's left hand and used a leg sweep maneuver to take plaintiff to the floor and regain control of him. Defendants contend that Gordon continued to resist even while on the floor so they called for additional assistance. (Exh. 1, ¶3; Exh. 2, ¶¶3, 4.)

Defendants Shuck, Candelora and Shuman responded to the call for assistance. Defendants state they found staff struggling to restrain Gordon,

12

who was on the floor.  Defendants assert that Gordon was kicking and attempting to resist staff efforts to apply restraints.  Defendants state they assisted in attempting to hold Gordon still and applying restraints. Defendants state that due to his efforts to assault staff and continued combativeness, he was carried to the Special Housing Unit and placed in ambulatory restraints.  (Exh. 1, ¶4; Exh. 2, ¶4; Exhs. 4, 5, 6.)

Defendants state that Gordon was examined at 11:53 a.m. by defendant Peoria.  Peoria states Gordon was advised of the procedure for obtaining a copy of the Inmate Injury Assessment Form and advised to follow up through sick call procedures as needed.  (Exh. 3, ¶2.)

Defendants state that as a result of the incident, Gordon received a disciplinary incident report for Threatening, Attempted Assault, and Refusing an Order.  (Exh. 2, ¶5, and p. 3-5.)  A disciplinary hearing was held on September 12, 2000.  The DHO concluded that Gordon had committed the prohibited act of Attempted Assault and sanctioned him to 27 days loss of Good Conduct Time, 30 days disciplinary segregation, a disciplinary transfer, and 180 days loss of commissary and telephone privileges.  (*Id.*)

The DHO report indicates that Gordon was advised of his rights and waived his right to staff representative.  The report further states that Gordon had no documents for the DHO to consider and made no complaints of procedural errors during the hearing.  The DHO found Gordon guilty of the offense of Attempted Assault based on the eyewitness account of the reporting officer and the memoranda of Gonzalez, Shuman, Shuck, and Candelora as well as plaintiff's injury assessment form.  (*Id.*)

Defendants also provided a copy of the Notice of Disciplinary Hearing.  (Exh. 2, p.  8.)  The notice indicates that plaintiff did not wish to have a staff representative or witnesses.  Plaintiff did not sign the form but instead the notice is signed "I/M cuffed" indicating inmate was restrained when he was given the notice.  (*Id.*)

In addition to the documents relating to the incident, defendants provided copies of relevant medical reports.  The inmate injury assessment completed by Peoria indicates defendant was seen at 11:53 am.  Plaintiff complained he was kicked in the head by a correctional officer, his back hurt,

and "15 of them" jumped on me.  The assessment states the injury required no medical attention.  Peoria noted no injuries.  (Exh. 3, p. 5.)

Defendants also provided the medical report pertaining to plaintiff's examination on December 19 at USP Allenwood.  The report indicates that plaintiff was in an automobile accident in early 1997 which resulted in an injury to his back.  Plaintiff was undergoing therapy for his back when he was incarcerated.  The report states that Gordon indicated that the pain was more constant than it was then.  According to the report, Gordon did state that when he "was in the Lewisburg Federal Penitentiary he was involved in a situation where he was taken to the office, had to put his hands up against the wall, and then had his feet taken out from underneath him."  (Exh. 3, p. 4.) The report further states that Gordon said he fell at that time.  The doctor noted that plaintiff had "really no radicular symptoms or, in my estimation, significant change."  (*Id.*)

Defendants contend that Gordon's excessive use of force claim does not rise to the level of a constitutional violation.  Defendants also assert that plaintiff fails to state a claim of constitutional magnitude with regard to his

15

allegation that he was placed in a "dry cell."  Lastly, defendants argue that

Gordon has failed to state an Eighth Amendment claim with regard to his

allegation that he was denied appropriate medical care.

### A.    Injunctive and Declaratory Relief

Any claim for injunctive or declaratory relief is subject to dismissal when

a prisoner is transferred.  *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir.

1993) (A prisoner's transfer or release from prison moots his claims for

injunctive or declaratory relief since he is no longer subject to the conditions

he alleges are unconstitutional); *see also Weaver v. Wilcox*, 650 F.2d 22, 27

(3d Cir. 1981) ("a prisoner lacks standing to seek injunctive relief if he is no

longer subject to the alleged conditions he attempts to challenge.")  Because

there is no factual dispute that the alleged incident occurred at USP

Lewisburg and plaintiff currently is incarcerated at USP Allenwood, Gordon's

request for declaratory and injunctive relief is denied.

## B.   **Exhaustion**

Title 28 U.S.C. § 1915 imposes obligations on prisoners who file civil

actions in federal court and wish to proceed *in forma pauperis*.  Section

1915(e)(2) provides:

> Notwithstanding any filing fee, or any portion thereof,
> that may have been paid, the court shall dismiss the
> case at any time if the court determines that (A) the
> allegation of poverty is untrue; or (B) the action or
> appeal (i) is frivolous or malicious; (ii) fails to state a
> claim on which relief may be granted; or (iii) seeks
> monetary relief against a defendant who is immune
> from such relief.

The PLRA provides that "no action shall be brought with respect to prior

conditions under . . . any . . . federal law, by a prisoner confined in any . . .

correctional facility until such administrative remedies as are available are

exhausted."  In *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000), the Third Circuit

held that this provision is mandatory and is applicable in *Bivens* cases.  The

United States Supreme Court, in *Booth v. Churner*, 121 S.Ct. 1819 (2001),

held that the PLRA "requires administrative exhaustion even where grievance

process does not permit award of money damages and prisoner seeks only

money damages, as long as grievance tribunal has authority to take some

17

responsive action." *See also Irwin v. Hawk*, 40 F.3d 347, 348 (11th Cir. 1994)

("When Congress prescribes an administrative remedy, application of the

exhaustion requirement is not a matter of judicial discretion.").

Accordingly, dismissal of a plaintiff's complaint is appropriate when an inmate

has failed to exhaust his available administrative remedies before bringing a

civil rights action.   *Ahmed v. Sromovski*, 103 F. Supp.2d 838, 843 (E.D.Pa.

2000) (the failure to complete the administrative-remedy process when an

administrative appeal was filed untimely required dismissal of the lawsuit

under § 1997e).  If a federal prisoner fails to follow the detailed procedures

and guidelines to exhaust his administrative remedies, including failing to

meet the time deadlines, the inmate's federal action cannot be maintained

but, rather, should be dismissed. *See Moscato v. Federal Bureau of Prisons*,

98 F.3d 757 (3d Cir. 1996) (finding inmate to have procedurally defaulted his

claim by failing to exhaust);  *see also Buckner v. Bussanich*, No. 1:CV-00-

1594, slip op. (M.D. Pa., Apr. 3, 2001) (Further, an administrative remedy is

not made unavailable simply because a prisoner failed to timely exercise his

rights under the procedure.  Otherwise, the prisoner could avoid the

exhaustion requirement simply by refusing to pursue administrative

remedies.)

Based on the record before this court, plaintiff's own exhibits

demonstrate that he has not exhausted his "dry cell" and medical claims. The

only claim before this court which plaintiff has exhausted is the excessive use

of force claim. Therefore, other than the excessive use of force claim,

Gordon's claims will be dismissed for failure to exhaust his administrative

remedies.[6]

---

6    Even if plaintiff had exhausted his medical and "dry cell" claims, summary judgment would have been granted on behalf of defendants because Gordon has failed to demonstrate deliberate indifference to a serious medical need by defendant Peoria and has failed to prove that his brief confinement in a dry cell rises to the level of a constitutional violation.

Where an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Disagreement among individuals as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Inst. Inmates v. Lensario*, 834 F.2d 326, 346 (3d Cir. 1987).

Moreover, the plaintiff has submitted no expert medical opinion to controvert the defendants' expert medical opinion. When expert opinion is offered in support of a motion for summary judgment, the opposing party must supply opposing expert opinion to create a triable issue of fact. *Gaus v. Mundy*, 762 F.2d 338 (3d Cir. 1985). *See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) (requiring a prisoner to provide expert testimony in a medical deliberate indifference case). The only expert medical opinion provided by plaintiff was a report dated July 31, 1998 involving the review of an MRI taken on March 20, 1997. The examination and report predates the incident under review by this court.

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D.Pa.), *aff'd*, 101 F.3d 691

## C.    <u>Excessive Use of Force</u>

The only remaining claim before this court is plaintiff's excessive use of force claim.  The Eighth Amendment protects against infliction of "cruel and unusual punishment."  However, "not every governmental action affecting the interests or well being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Id.*

In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)(*quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  To determine whether a constitutional violation has occurred, courts consider factors including the need for force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to

---

(3d Cir. 1996).  The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. *Farmer v. Carlson*, 685 F. Supp. at 1339.

20

the safety of staff and inmates and any efforts to temper the severity of a forceful response. *Id.* The prohibition of cruel and unusual punishment excludes de minimus uses of force provided the use is not repugnant to the conscience of mankind. *Hudson*, 503 U.S. at 9-10.

Plaintiff contends that the initial force used against him was a "leg sweep." Gordon then alleges that he was kicked and punched by two defendants and ultimately a total of fifteen correctional officers kicked, punched, and jumped on his back. The only injury plaintiff asserts he suffered from the alleged assault was a back injury. When plaintiff was examined shortly after the altercation, there were no injuries, not even any evidence of minor cuts or bruises that would normally be associated with the type of assault described by plaintiff. Gordon's total lack of visible injuries is completely inconsistent with the events he describes.[7]

---

[7]    The only "evidence" presented by Gordon is his own statements via his pleadings and his affidavit. If Gordon was the victim of the assault he described, even if the assault was not witnessed by others, certainly his injuries would have been observed such as bruises, tenderness, swelling. Plaintiff only alleges that he suffered an internal injury to his back.

21

Furthermore, the evidence presented by both defendants and the plaintiff suggest alternative explanations for the only injury identified by plaintiff.  Gordon admitted to being in a automobile accident prior to his incarceration in which he was undergoing physical therapy for a back injury.  He also stated to the orthopedic specialist who treated him after the September 2000 incident that "he can't relate it to any episode that made it worse."  (*See* Exh. 3, ¶4, pp. 3, 4.)

Plaintiff fails to meet his burden to survive summary judgment as to his excessive use of form claim.  Gordon is required to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing a genuine issue for trial.  *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986).  Gordon has presented no corroborating evidence which supports his allegations.   Based on the documents and declarations presented by defendants, the force used by defendants in the context of regaining control of Gordon was done "in a good faith effort to . . . restore discipline" as set forth in *Hudson*, 503 U.S. at 6.  Furthermore, Gordon fails to prove that he suffered any injuries as a result

22

of the incident.  Plaintiff has provided contradictory information that the injury

was the result of a pre-incarceration automobile accident.  Accordingly,

summary judgment will be granted for defendants as to the excessive force

claim.

### D.    Plaintiff's Motion to Amend Complaint

Also pending before this Court is plaintiff's motion to amend his

complaint.  Plaintiff wants to add an additional claim regarding his disciplinary

hearing which pertained to the September 2000 altercation.  Federal Rule of

Civil Procedure 15(a) states that leave to amend "shall be freely given when

justice so requires."

As previously noted, defendants included in their exhibits documents

relating to Gordon's hearing.  The DHO report states that Gordon waived his

right to staff representative, indicated he understood his rights, and had no

documents for the DHO to consider.  The DHO dismissed two charges

against Gordon and found plaintiff guilty of attempted assault based on the

testimony of an eyewitness, incident report and investigation, injury

assessment form, and memoranda of defendants Gonzalez, Shuman, Shuck,

and Candelora.  Again, plaintiff provides no corroborating evidence to support his new claim.  The record before this court reveals that Gordon was provided a proper hearing and would not prevail on his claim.  Accordingly, plaintiff's motion for leave to file an amended complaint is denied.

## III.    Conclusion

Defendants' motion for summary judgment will be granted.   Plaintiff's motion for leave to file an amended complaint is denied.  An appropriate order will be issued.

SYLVIA H. RAMBO
United States District Judge

Dated: September  *13*  , 2001.

24

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *


Re:  1:01-cv-00331    Gordon v. Gonzalez


True and correct copies of the attached were mailed by the clerk
to the following:

        Juken Washington Gordon 05373-088
        USP-ALLENWOOD
        Maximum Security Correct. Inst.
        P.O. Box 3000
        White Deer, PA  17887

        Anne K. Fiorenza, Esq.
        U.S. Attorney's Office
        228 Walnut Street Suite 217
        Harrisburg, PA  17108



cc:
Judge                      (X )            (X ) Pro Se Law Clerk
Magistrate Judge           (  )            (  ) INS
U.S. Marshal               (  )            (  ) Jury Clerk
Probation                  (  )
U.S. Attorney              (  )
Atty. for Deft.            (  )
Defendant                  (  )
Warden                     (  )
Bureau of Prisons          (  )
Ct Reporter                (  )
Ctroom Deputy              (  )
Orig-Security              ( . )
Federal Public Defender    (  )
Standard Order 93-5        (  )
Order to Show Cause        (  ) with Petition attached & mailed certified mail
                               to:  US Atty Gen  (  )  PA Atty Gen (  )
                                    DA of County (  )  Respondents (  )
Bankruptcy Court           (  )
Other_____       (  )

                                   MARY E. D'ANDREA, Clerk


   DATE: September 13th, 2001          BY: _____
                                           Deputy Clerk