UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUKEN W. GORDON, | : | Civil Action No. 1:CV-01-0331 |
| Plaintiff, | : | |
| v. | : | (Rambo, J.) |
| | : | |
| N. GONZALEZ, *et al.*, | : | Filed Electronically |
| Defendants. | : | |

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF "SURVEILLANCE" VIDEOTAPE

I.   COUNTER-STATEMENT OF THE FACTS

The United States Penitentiary at Lewisburg ["U.S.P. – Lewisburg"] "has many surveillance cameras with recording capability mounted at various areas throughout the institution."[1]  On September 9, 2000, defendants Nelson Gonzalez and Stacey L. Puckey denied plaintiff Juken Gordon entrance to the inmate dining hall.  The parties argued in the hallway outside of the entrance to the dining hall.  Lieutenant Gonzalez then ordered Officer Puckey to bring Mr. Gordon into the office of the Lieutenant.  Puckey brought Gordon into the office.

In the office of the Lieutenant, a physical altercation ensued between all of the parties, including Officers Shuman, Candelora, and Shuck.  The

---

[1] See Exhibit "A" (Letter of May 25, 2004 from Lori Cunningham, Supervisory Attorney).

defendants then lifted Mr. Gordon into the air and carried him out of the office, down the hallway, and finally to the Special Housing Unit ["SHU"].

The next day, Mr. Gordon submitted a BP-8 to the Special Investigative Staff ["SIS"].[2] In his BP-8, Gordon grieved his allegation of racial prejudice outside the dining hall. Gordon then wrote that the officers

> ...take me out the office, down to the lock down unit. Holding me in the air the video camera will show everything the way i went to Lt's. Office and the way these officers took me to the lock down unit.

Doc. No. 1, Exh. "A," at 2 (emphasis supplied). On October 5, 2000, Gordon re-submitted a typed copy of this September 10 BP-8 since staff had issued no response to the initial grievance. Id.

On September 20, 2000, a Discipline Hearing Officer ["DHO"] presided at a misconduct hearing on Mr. Gordon. The DHO refused a request by Gordon to review surveillance videotape and found Gordon guilty of misconduct. See Plaintiff's Motion to Amend and Supplemental Pleading, Doc. No. 38.

---

[2] See Document No. 1, Complaint, at Exhibit "A" (Administrative Remedy dated October 5, 2000) wherein Mr. Gordon typed,

> I inmate Gordon have not received a copy of the orginal [sic] BP.8 or the sign [sic] BP.8. from the S.I.S. staff member. Just to note that the orginal(8) dated 9-10-2000...

> Inmate Gordon would like to explain to the coordinator that this is the exact quotation from my orginal BP.8.

2

Before deciding to re-submit his BP-8, Mr. Gordon submitted a BP-9 Request for Administrative Remedy on September 28, 2000.  See Doc. No. 1, Exhibits.  In the BP-9, Gordon referred back to his September 10 BP-8.  Id.  In his response, (now retired) Warden Donald Romine stated that an "investigation" conducted by the Special Investigative Agent indicated no "evidence" to substantiate the complaints of Mr. Gordon.  Id.

On November 5, 2000, Mr. Gordon submitted a BP-10 Regional Administrative Remedy Appeal.  Gordon wrote, "The Prison system video camera will show that Lt. Gonzalez and Officer Puckey did not allow me ... to go and eat in the messhall."  Id.  (Then) Regional Director David M. Rardin denied the appeal.  A BP-11 also was denied.

## II.   COUNTER-HISTORY OF THE CASE

On February 22, 2000, Mr. Gordon filed *pro se* the instant complaint.  On April 17, 2001, he filed a "Motion for Production of Evidence."  (Doc. 8).  In that motion, Gordon requested a court order for the defendants to produce the "survalance vedio [sic] tape of the september 9, 2000, tape at the institution at USP Lewisburg, which was taken on that day infrount the messhall and along the hall way, This servalance vedio tape is to plaintiff defense and is very important to plaintiff civil complaint in this action[.]"  Id.  (Emphasis supplied.)

3

On April 30, 2001, Assistant U.S. Attorney Anne K. Fiorenza entered her appearance for the defendants by filing a Motion for Enlargement of Time to respond to the plaintiff's motion.[3]  In her motion, AUSA Fiorenza averred that she had contacted "legal counsel at USP Lewisburg to inquire about the existence of <u>the tape referred to</u>" in Gordon's motion.  (Doc. No. 10, ¶10)(emphasis supplied).  Ms. Fiorenza then averred that legal counsel at USP Lewisburg reported that "the tape" was still in existence and that SIS staff had been instructed not to destroy it.  <u>Id</u>. at ¶11.  Finally, AUSA Fiorenza averred that an enlargement of time would allow she and agency counsel "to investigate his claims and to prepare a response which is thorough and complete in <u>all</u> respects."  <u>Id</u>. at ¶12 (Emphasis supplied).  On May 7, 2001, the Court granted the motion of Ms. Fiorenza and enlarged the response time until May 10, 2001 (Doc. 11).

On May 8, 2001, AUSA Fiorenza filed Defendants' Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) with regard to the motion by the plaintiff.  On May 10, 2001, Ms. Fiorenza also filed "Defendants'

---

[3] AUSA Fiorenza referred to it as "Plaintiff's Motion to Stop the Defendants from Destroying Surveillance Video Tape Taken on September 9, 2000 at USP Lewisburg."  <u>See</u> Doc. No. 10.  Ms. Fiorenza apparently filed this motion without realizing that she had no obligation to respond yet to the plaintiff's motion until he served her with a supporting brief.  <u>See</u> Local Rule 7.5.  Plaintiff never did serve her with such a brief.  Accordingly, the Court deemed his motion to have been withdrawn.  <u>See</u> Doc. No. 27 (Memorandum and Order, June 28, 2001).

Opposition to Plaintiff's Motion to Stop the Defendants from Destroying Surveillance Video Tape Taken on September 9, 2000 at USP Lewisburg." (Doc. 15). In this "Opposition," Ms. Fiorenza essentially reiterated her April 30 averment that SIS had been instructed not to destroy "the tape." Id. The Court granted the motion for protective order and disregarded as unnecessary the "Opposition" to the withdrawn motion of the plaintiff.

Subsequently, the Court granted summary judgment for the defendants and Mr. Gordon appealed. On June 24, 2002, Mr. Gordon filed a letter motion with the U.S. Court of Appeals for the Third Circuit to request again production of a copy of the surveillance videotape "in front of the inmate dining hall and along the institution hall way." See Doc. No. 66. In her response, AUSA Fiorenza discussed the general objection by the Government to such production "because of the potential for breach of security." Id. Furthermore, she contended that any such production would have to provide for "limited" viewing of "relevant portions" of the tape in a controlled setting for security reasons. Id. The Third Circuit remanded the motion along with the issue of whether the remaining defendants used excessive force.

Upon remand, this Court set a discovery schedule in January 2004. On February 11, 2004, Mr. Gordon filed "Plaintiff's Request for Production

5

of Documents Pursuant to Federal Rule of Civil Procedure 34." (Doc. 74). In this Request, Gordon again requested a copy of the "serveillance [sic] video tape[.]" Id. at ¶4. On March 10, 2004, Attorney Cunningham responded that the "relevant ... surveillance videotape" will be made available for Gordon to review. See Exhibit "B," at 4 (Defendant's [sic] Response to "Plaintiff's Request for Discovery"). On April 5, 2004, AUSA Michael J. Butler mailed to undersigned counsel[4] a copy of "a video tape that relates to allegations in the" case. See Exhibit "C" (cover letter from AUSA Butler).

Undersigned counsel proceeded to view the videotape sent by Mr. Butler. The tape was produced by a hand-held videocamera. It shows Mr. Gordon in the SHU dry cell from 12:43 p.m. through 12:54 p.m. (i.e. over an hour after the end of the incident in question). On April 12, 2004, undersigned counsel wrote to AUSA Butler and Ms. Cunningham to ask whatever happened to the overhead surveillance security camera videotape.

On May 3, 2004, AUSA Butler deposed Mr. Gordon while Attorney Cunningham observed. At that time, Gordon testified as to why he believes that a surveillance tape either existed or still exists and the relevance of such a tape. See Exhibit "D" (Deposition of Juken Washington Gordon, at 34).

---

[4] Undersigned counsel entered his "provisional appearance" as counsel for Mr. Gordon on March 4, 2004 at the request of the Federal Bar Association.

6

On May 17, 2004, undersigned counsel mailed a follow-up letter to Mr. Butler as to the existence of "surveillance" videotapes.  See Exhibit "E" (Letter from David L. Glassman).  On May 21, Mr. Butler called and left a voicemail message for undersigned counsel that the defense possesses no surveillance videotapes from this case.  Id.  On May 25, Ms. Cunningham responded to the April 12 letter from undersigned counsel.  See Exhibit "A."

On June 19, 2004, undersigned counsel wrote back to Ms. Cunningham, with a copy sent to Mr. Butler.  See Doc. No. 107 (Defendants' Brief in Support of Motion in Limine to Exclude Evidence of "Surveillance" Videotape), at Exhibit "A."[5]  On June 24, Mr. Butler responded on their behalf.  Id. at Exhibit "B."

---

[5] The defendants also included in their Exhibit "A" a second letter dated June 19, 2004 from undersigned counsel but addressed to the Health Services Department at USP Allenwood concerning an unrelated matter. Undersigned counsel assumes that defense counsel mistakenly inserted this second letter into their Exhibit as no reference is made to it in their Brief and its relevance to this issue is unknown to the plaintiff.

III.    COUNTER-STATEMENT OF THE QUESTIONS INVOLVED

    A.    WOULD THE PRISON HALLWAY OVERHEAD SURVEILLANCE VIDEOTAPE HAVE MADE THE EXISTENCE OF EXCESSIVE FORCE MORE OR LESS PROBABLE WHERE THE PLAINTIFF PRISONER HAS ALLEGED THAT THE VIDEOTAPE WOULD HAVE SHOWN CORROBORATIVE EVIDENCE OF MIS-TREATMENT OUTSIDE OF THE OFFICE OF DEFENDANT GONZALEZ IMMEDIATELY BEFORE AND AFTER ADDITIONAL MISTREATMENT INSIDE OF THE OFFICE?

        Suggested Answer:    Yes.

    B.    SHOULD THE JURY DETERMINE WHETHER THE DEFENSE TEAM INTENTIONALLY OR MISTAKENLY AVERRED THAT THE HALL-WAY SURVEILLANCE VIDEOTAPE WOULD BE PRESERVED FOR USAGE AT TRIAL?

        Suggested Answer:    Yes.

IV.   ARGUMENT

   A.   THE PRISON HALLWAY OVERHEAD SURVEIL-
        LANCE VIDEOTAPE WOULD HAVE MADE THE
        EXISTENCE OF EXCESSIVE FORCE MORE OR
        LESS PROBABLE WHERE THE PLAINTIFF
        PRISONER HAS ALLEGED THAT THE VIDEO-
        TAPE WOULD HAVE SHOWN CORROBORATIVE
        EVIDENCE OF MISTREATMENT OUTSIDE OF
        THE OFFICE OF DEFENDANT GONZALEZ
        IMMEDIATELY BEFORE AND AFTER
        ADDITIONAL MISTREATMENT INSIDE OF THE
        OFFICE.

"Relevant evidence" means evidence "having any tendency to make the existence of any fact ... more probable or less probable than it would be without the evidence." F.R.E. 401. Furthermore, that fact must be "of consequence to the determination of the action[.]" Id.

Initially, defendants contend that the existence of the videotape at issue is irrelevant because their attorneys presently allege that it never existed. Unfortunately, their attorneys had informed Mr. Gordon, this court, and the Third Circuit from April 2001 through April 2004 that the tape indeed existed and, furthermore, that their SIS agent had preserved it for the introduction by Gordon at trial if Gordon so desired.

Mr. Gordon is expected to testify that he submitted a BP-8 to an SIS agent just one day after the incident at bar took place. Gordon will testify

that he typed up and submitted a verbatim copy of that BP-8 on October 5, 2000 since the unit staff had sent him no response to his initial BP-8. Then, Gordon intends to offer a copy of the October 5 BP-8 into evidence. The BP-8 will show that he made reference to what he expected the video camera to show as early as the day after the incident.

Specifically, Gordon will allege that the video camera would have shown racial preference by Lieutenant Gonzalez towards a Latino inmate in the hallway outside of his office. Furthermore, Gordon will allege that the video would have shown the hostile demeanor of Lieutenant Gonzalez and Officer Puckey towards him during their ensuing argument in the hallway. The video also would have shown whether Officer Puckey had used appropriate force in bringing Gordon from the hallway to the Lieutenant's office at the direction of the Lieutenant following their heated exchange. Additionally, Gordon is expected to testify, consistent with his BP-8, that the video would have shown the excessive manner in which the defendants had taken him out of the office and down the hallway to the lock down unit by holding him in the air after they had beaten him. Such evidence could have been indicative of the temperament of the defendants immediately prior to their exit from the Lieutenant's office and of the pain and duress allegedly being experienced by Gordon.

Furthermore, it is relevant that Mr. Gordon allegedly submitted his initial BP-8 to SIS. The defense team averred that they had instructed SIS to preserve the videotape. Clearly, the issue of videotape preservation by SIS is a factual issue since both sides have acknowledged interaction with SIS with respect to the existence of the disputed surveillance videotape.

For the foregoing reasons, Mr. Gordon alleges that the existence of the hallway surveillance videotape would have made the facts at issue "more probable or less probable than it would be without the evidence." F.R.E. 401. Furthermore, Gordon alleges that the facts contained on that tape would have been of consequence to the determination of the action. Therefore, Juken Gordon submits that the facts surrounding the disposition of the hallway surveillance videotape are relevant to this action.

  B. THE JURY SHOULD DETERMINE WHETHER THE DEFENSE TEAM INTENTIONALLY OR MISTAKENLY AVERRED THAT THE HALL-WAY SURVEILLANCE VIDEOTAPE WOULD BE PRESERVED FOR USAGE AT TRIAL.

On May 25, 2004, Attorney Cunningham averred that the USP – Lewisburg surveillance camera system probably taped over the September 9 hallway surveillance tape by September 23, 2000.  See Exhibit "A."[6] Therefore, the defense must concede that such a tape existed at one time. Understandably, Gordon expects the defense to deny that the tape ever was copied from their surveillance system onto a VHS videotape.

Defense counsel contends that the only VHS videotape ever possessed by SIS and themselves is the one taken from a hand-held video camera in the SHU during a mundane exchange of restraints on Mr. Gordon in a "dry" cell over an hour after the alleged assault.  Obviously, Mr. Gordon was not attempting for four years to obtain a copy of that mundane tape.

---

[6] In candor to the tribunal, undersigned counsel should note a relevant fact not noted by defense counsel.  That is, on December 29, 2000, BOP Northeast Regional Counsel Henry J. Sadowski wrote to Mr. Gordon that the September 9, 2000 "video tape taken in the dining room ... no longer exists." Argument can be made as to whether that averment extends to tape merely within the dining room or to the hallway outside of the dining room as well. Certainly, defense counsel can use this early letter from Attorney Sadowski to cross-examine Gordon concerning his allegation of recent evidence destruction.  However, the letter also implies that the tape had existed at one time.

As early as April 17, 2001, Mr. Gordon delineated exactly which tape he desired. Specifically, he requested the surveillance tape showing in front of the mess hall and along the hallway. On April 30, 2001, an erroneous presumption or misunderstanding may have commenced between SIS, Ms. Cunningham, and Ms. Fiorenza regarding the contents of the VHS tape held by SIS. Perhaps they were too busy to view it. Consequently, they may have assumed that the tape held by SIS depicted what Gordon expected it to depict when it proved later to have depicted merely some subsequent SHU activities. Unfortunately, defense counsel submitted no affidavits from Attorneys Fiorenza and Cunningham as to why they represented for three years that staff possessed a surveillance videotape of the hallway outside of the lunchroom and Lieutenant's office when they actually possessed no such tape.

Indeed, AUSA Fiorenza took great pains to caution the Third Circuit in a footnote that only "relevant portions" of the "surveillance videotapes" should be shown for security reasons. However, defense counsel ultimately produced merely an eleven minute camcorder tape consisting entirely of a peaceful exchange of restraints on Mr. Gordon. Therefore, one easily can understand how Gordon, a *pro se* plaintiff, had felt misled by the defense

13

representations as to the contents of the VHS tape until this court appointed counsel for him.

Unfortunately, defense counsel greatly exacerbated this issue. Plaintiff appreciates the high volume of work performed by defense counsel. However, somebody on the defense team should have taken up to eleven minutes of their time between 2001 and 2004 to have investigated the contents of their own tape.[7]  Indeed, Ms. Fiorenza represented to this court that they intended to investigate the claims of Mr. Gordon when she moved for an enlargement of time on April 30, 2001.

---

[7] Actually, undersigned counsel determined within seconds after the start of the VHS tape furnished by defense counsel that the tape contained a time reference much later than the alleged assault and was shot from a camcorder rather than an overhead camera.

14

V. CONCLUSION

For all of the above reasons, plaintiff Juken Gordon requests the court to deny the instant motion in *limine* of the defendants and allow evidence of the four year *pro se* effort by Gordon to preserve the surveillance videotape in question.

>                  Respectfully Submitted,
>                  LEWISBURG PRISON PROJECT
>     BY:   s/David L. Glassman, Staff Attorney
>                  P.O. Box 128
>                  Lewisburg, PA 17837
>                  Phone:  (570)523-1104
>                  Fax:     (570)523-3944
>                  Email:  david_glassman@hotmail.com
>                  PA Bar 51200
>                  Attorney for Plaintiff Juken W. Gordon

Date: September 23, 2004

## CERTIFICATE OF SERVICE

I certify that I served today the foregoing "Plaintiff's Brief in Opposition to Defendants' Motion in Limine to Exclude Evidence of 'Surveillance' Videotape" in the following manner upon the following person:

**SENT VIA ECF NOTICE TO**:
Michael J. Butler
Assistant U.S. Attorney
Michael.J.Butler@usdoj.gov

                                            s/David L. Glassman, Staff Attorney
                                            Attorney for Plaintiff Juken Gordon

Date: September 23, 2004