UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF PENNSYLVANIA


JUKEN WASHINGTON GORDON,
                Plaintiff,


        -Vs-                          CIVIL ACTION NO.1:CV-01-0331
                                      (JUDGE RAMBO)


N. GONZALEZ, EL AL.,
                Defendants,



            EXHIBITS IN SUPPORT OF PLAINTIFF
        RESPONSE TO MOTION FILED BY COUNSEL TO
        WITHDRAW HIS APPEARANCE AS ATTORNEY FOR
        THE PLAINTIFF'S.



                        Respectfully Submitted

                    By _____
                        Juken Washington Gordon,
                        Pro-se Reg. No. 05373-088
                        Allenwood U.S.P.
                        Post Office Box 3000
                        White Deer, Pennsylvania 17887



Date: September 29, 2004                    **FILED**
                                          **HARRISBURG**

                                          OCT 0 1 2004

                                    MARY E. D'ANDREA, **CLERK**
                                    Per_____
                                          DEPUTY CLERK

## TABLE OF CONTENTS

| EXHIBITS | DESCRIPTION |
|----------|-------------|
| A | MRI of the cervical spine reports of Dr. Harold S. Parnes, M.D. dated March 4, 1997 and March 20, 1997 |
| B | CERVICAL MRI reports of Ms. Sondra J. Pfeffer, M.D. diplomate in radiology dated July 1998 |
| C | TWO (2) copies of Dr. Williams G. Reish, M.D. reports dated December 19, 2000 |
| D | ONE (1) copy of Thomas J. Payne, III, M.D. dated September 19, 2000 |
| E | LETTER dated March 4, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| F | LETTER dated May 3, 2004 form Mr. Glassman to Peter Heath, Office Administrator |
| G | LETTER dated May 28, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| H | LETTER dated June 1, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| I | MEMO to Divid from Karl Re: Juken Gordon DT: May 26, 2004 telephone conversation between Karl paralegal and Dr. Bill Reish |
| J | LETTER dated June 19, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| K | LETTER dated June 25, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| L | LETTER dated July 6, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| M | LETTER dated July 14, 2004 from Mr. Glassman to Steat Farm Insurance Company |
| N | LETTER dated July 14, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| O | LETTER dated July 19, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |

# ΩMEGA DIAGNOSTIC IMAGING, P.C.

### STATE OF THE ART OPEN AND NOISELESS MRI

HAROLD S. PARNES, M.D.
BOARD CERTIFIED
Diagnostic Radiology
Senior Member of the American Society of
Neuroradiology
Certificate of Added Qualification in
Neuroradiology

TEL: 718-332-1999
FAX: 718-332-3236

**PATIENT: JUKEN GORDON**

MARCH 4, 1997

**REFERRING PHYSICIAN: DR. RAIA**

MRI OF THE CERVICAL SPINE:

An MRI of the cervical spine was performed on an open MRI unit.

Multiple sagittal relatively T1 and gradient echo images were obtained through the cervical spine as well as axial relatively T1 weighted images through the disc spaces.

Straightening as well as reversal of the normal curvature of the cervical spine was noted on the sagittal images.

The visualized signal intensity within the marrow spaces was normal on the various pulse sequences.

The craniovertebral junction was unremarkable.

Posterior bulging discs were identified at the C3-4, C4-5, and C5-6 levels.

The visualized neural elements were intact.

The paraspinal soft tissues and fascial planes were intact.

IMPRESSION:
1. Straightening as well as reversal of the normal curvature of the cervical spine was noted on the sagittal images.
2. Posterior bulging discs were identified at the C3-4, C4-5, and C5-6 levels. Clinical correlation is suggested.

Thank you for the courtesy of this referral.

Harold S. Parnes, M.D.
Board Certified Diagnostic Radiology
Certificate of Added Qualification in Neuroradiology
Senior Member of the American Society of Neuroradiology

BROOKLYN MEDICAL SERVICES • 1513 VOORHIES AVENUE • BROOKLYN , NY 11235

# ΩMEGA DIAGNOSTIC IMAGING, P.C.
## STATE OF THE ART OPEN AND NOISELESS MRI

**HAROLD S. PARNES, M.D.**
BOARD CERTIFIED
Diagnostic Radiology
Senior Member of the American Society of
Neuroradiology
Certificate of Added Qualification in
Neuroradiology

TEL: 718-332-1999
FAX: 718-332-3236

PATIENT: JUKEN GORDON

REFERRING PHYSICIAN: DR. RAIA

MARCH 20, 1997

## MRI OF THE LUMBAR SPINE:

An MRI of the lumbar spine was performed on an open MRI unit.

Multiple sagittal relatively T1 and gradient echo images were obtained through the lumbar spine as well as axial relatively T1 weighted images through the disc spaces.

Straightening of the normal curvature of the lumbar spine was noted on the sagittal images.

The visualized signal intensity within the marrow spaces was normal on the various pulse sequences.

The conus medullaris was unremarkable.

Posterior bulging discs were identified at the L2-3, L3-4, L4-5 and L5-S1 levels.

The paraspinal soft tissues and fascial planes were unremarkable.

## IMPRESSION:

1. Straightening of the normal curvature of the lumbar spine was seen on the sagittal images.
2. Posterior bulging discs as noted at the L2-3, L3-4, L4-5 and L5-S1 levels. Clinical correlation is suggested.

Thank you for the courtesy of this referral.

Harold S. Parnes, M.D.
Board Certified Diagnostic Radiology
Certificate of Added Qualification in Neuroradiology
Senior Member of the American Society of Neuroradiology

BROOKLYN MEDICAL SERVICES • 1513 VOORHIES AVENUE • BROOKLYN, NY 11235



**EMPIRE STAT MED REVIEW, P.C.**

19 West 34th Street, Suite 423, New York, NY 10001-8199
(212) 947-6767 • (516) 933-8831 • (914) 332-4288
Offices: Manhattan, Queens, Brooklyn, Staten Island, Nassau, Suffolk,
Westchester, Rockland, Dutchess, Orange & Sullivan Counties

1451 West Cypress Creek Road, Ft. Lauderdale, FL 33309 • (954) 928-2884

SPECIALTIES
▲ Orthopedics ▲   ▲ Neurology ▲   ▲ Chiropractic ▲   ▲ Dentistry   ▲ General Surgery   ▲ Hematology   ▲ Industrial Medicine   ▲ Internal Medicine
▲ Oncology   ▲ Radiology ▲   ▲ Otolaryngology ▲   ▲ Ophthalmology ▲   ▲ Plastic Reconstructive Surgery   ▲ Cardiology   ▲ Psychiatry
▲ Rehabilitation & Physical Medicine ▲   ▲ Pulmonology ▲   ▲ Urology ▲   ▲ Dermatology ▲   ▲ Vascular Surgery

July 31, 1998

GEICO
P.O. Box 177
Woodbury, NY   11797

Attn:  Bob Winthrop

                        RE :  Guken Gordon
                         D/A:  2/17/97
                         F/N:  009664340 0101 012
                         INS:  David Hanuman
                         REF:  140341

Dear Mr. Winthrop:

At your request, I have reviewed the cervical and lumbar MRI studies performed on the above-named person.

Both examinations were conducted by Omega Diagnostic Imaging, Brooklyn, New York.

## I: CERVICAL MRI:

Examination date is 3/4/97, 2 weeks following trauma.

Imaging sequences performed include T1 sagittal, T2 gradient sagittal, and T1 axial.

Normal cervical lordosis is maintained.  No fractures, malalignments, or contusions of the cervical vertebrae are noted.

There are no cervical disc herniations or pathologic disc bulges.

Exhibit(1)

RE: Guken Gordon
July 31, 1998
Page 2

Dr. Pfeffer

The cervical spinal cord is of normal diameter and signal intensity. There are no cord contusions or intrinsic cord lesions.

Normal facet joint alignment is maintained. There is no neuroforaminal or exiting cervical nerve root encroachment.

The paraspinal soft tissues are unremarkable.

## II: LUMBAR MRI:

Examination date is 3/20/97, just over 4 weeks following trauma.

Imaging sequences performed are T1 sagittal, T2 gradient sagittal, and T1 axial.

Normal lumbar lordosis is maintained. No fractures, subluxations, or contusions of the lumbar vertebrae are demonstrated.

There are no lumbar disc herniations or pathologic disc bulges.

A normal conus medullaris is visualized. There is no spinal stenosis or intraspinal neoplasm.

Normal facet joint alignment is maintained. There is no neuroforaminal or exiting lumbar nerve root encroachment.

The paraspinal soft tissues are intact.

SUMMARY: These are normal cervical and lumbar MRI examinations. No disc injuries are confirmed.

"I, Sondra J. Pfeffer, M.D., a physician authorized by law to practice in the state of New York, am not a party to the above entitled action, and hereby affirm that the foregoing statement is true, under the penalty of perjury.

Dated, thirty-first day of July, 1998."

Sincerely yours,

Sondra J. Pfeffer, M.D.
Diplomate in Radiology
SP/b

Exhibit(1)

DON - 05373-088
ALLENWOOD

-00

Gordon is 32 and he comes because he has discomfort in his low back. His history starts in 1997 before he got incarcerated. This would have been in January or ~ary of 1997. He was involved in an automobile accident in New York. He was ~ by a private physician and had back pain. He was started on therapy, started on ~cation, and before he could finish his treatment he was incarcerated. This would ~ been around April. He says his back was really sore and it hurt. He had an MRI at ~time. He is not exactly sure what it showed, but he doesn't think it showed anything ~gnificance. He thinks his doctor told him that he had a fracture. He said his pain ~ really went away since that time and kind of lingered. It then got worse. He can't ~ relate to an episode that made it worse. He says that his pain is more constant now ~ it was then, he has it a significant amount of time. It is not associated with any leg ~ at all and he has no radicular symptoms. It is not made worse by coughing or ~ing.

~ of significance is that he says when he was in the Lewisburg Federal Penitentiary he ~ involved in a situation where he was taken to the office, had to put his hands up ~st the wall, and then had his feet taken out from underneath him. He fell at that ~. He called the police. He had really no radicular symptoms or, in my estimation, ~ificant change.

~ical examination reveals that his forward flexion is good. His lateral bending is ~. Straight leg raising is negative. Deep tendon reflexes of the knee and ankle are ~al. Sensory examination is okay. Extensor hallucis longus rates a 5. He has no ~ notch tenderness.

~ two films, AP and lateral. He has some hypertrophic formation at the superior ~ate of L3, suggestive of an old fracture or osteoarthritic change. There is also ~panying disc space narrowing between L2 and L3, with a small osteophyte maybe ~ superior aspect of L4. There does not appear to be any spondylolysis or ~iolisthesis. I don't have any obliques, but I don't see it on the lateral.

~ his problem is residual compression fracture with a disc that is deteriorating in that ~ not herniated, but just deteriorating. I think he has degenerative disc disease that ~spond to an exercise and anti-inflammatory program. No MRI is indicated.


                    William G. Reish, M.D.

Defts 00102

GORDON - 05373-088
USP ALLENWOOD

12-19-00

Mr. Gordon is 32 and he comes because he has discomfort in his low back. His history first starts in 1997 before he got incarcerated. This would have been in January or February of 1997. He was involved in an automobile accident in New York. He was seen by a private physician and had back pain. He was started on therapy, started on medication, and before he could finish his treatment he was incarcerated. This would have been around April. He says his back was really sore and it hurt. He had an MRI at that time. He is not exactly sure what it showed, but he doesn't think it showed anything of significance. He thinks his doctor told him that he had a fracture. He said his pain never really went away since that time and kind of lingered. It then got worse. He can't really relate to an episode that made it worse. He says that his pain is more constant now than it was then, he has it a significant amount of time. It is not associated with any leg pain at all and he has no radicular symptoms. It is not made worse by coughing or sneezing.

Also of significance is that he says when he was in the Lewisburg Federal Penitentiary he was involved in a situation where he was taken to the office, had to put his hands up against the wall, and then had his feet taken out from underneath him. He fell at that time. He called the police. He had really no radicular symptoms or, in my estimation, significant change.

Physical examination reveals that his forward flexion is good. His lateral bending is good. Straight leg raising is negative. Deep tendon reflexes of the knee and ankle are normal. Sensory examination is okay. Extensor hallucis longus rates a 5. He has no sciatic notch tenderness.

He has two films, AP and lateral. He has some hypertrophic formation at the superior endplate of L3, suggestive of an old fracture or osteoarthritic change. There is also accompanying disc space narrowing between L2 and L3, with a small osteophyte maybe on the superior aspect of L4. There does not appear to be any spondylolysis or spondylolisthesis. I don't have any obliques, but I don't see it on the lateral.

I think his problem is residual compression fracture with a disc that is deteriorating in that level, not

Devan Chanmugam, M.D.

BP-S622.060   **RADIOLOGIC CONSULTATION REQUEST/REPORT** CDFRM
AUG 96
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

Patient Identification
Name, Register Number, Institution

Gordon, Juken
#05373-088

USP Lew

Age 32    Sex M

Pregnant NO

☐ Yes  ☐ No

Requested by V Fauton

EXAMINATION REQUESTED

Cervical Spine (neck)
AP
L-S Spine- AP

Date Requested 9/11/00

Specific reason(s) for request (Complaints and findings)

_continuous pain order L-S are at neck while started last Unknown Sullivan immediate use of force._

Date of examination  9-14-00     Date of Report     Date of Transcription    Film # 9-464

Radiologic Report

Cervical spine: AP and lateral views were obtained. The odontoid is obscured. As visualized the vertebral bodies maintain their normal height. The disc spaces are preserved. No destructive lesions are noted. There is no evidence of fracture.

LUMBAR SPINE: There is mild anterior wedging noted at L2. There are ~~hypertrophic changes present from L2 through L4. The disc spaces are maintained.~~ There is no evidence of an acute fracture.

Signature                          Location of Radiologic Facility
                                   Thomas J. Payne III, M.D.

Original - Medical Record; Copy - Physician; Copy - Radiology
(This form may be replicated via WP)
& t:   September 19, 2000        Thomas J. Payne, III, M.D.
                                  Board Certified Radiologist
Printed on Recycled Paper    Ahmed S. Abel Salam, M.D.  1/25/00


BP-S622.060   **RADIOLOGIC CONSULTATION REQUEST/REPORT** CDFRM
AUG 96
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

Patient Identification
Name, Register Number, Institution

Gordon, Juken
05373-088

Age 32   Sex M

Pregnant

☐ Yes  ☒ No

Requested by
J. Bennett-Meehan

EXAMINATION REQUESTED

Lumbar Spine

Date Requested 11/9/00

Specific reason(s) for request (Complaints and findings)

h/o LBP from last institution — twisted Back

Date of examination    Date of Report    Date of Transcription    Film #
              **INMATE FAILED TO SHOW**

Radiologic Report       **FOR CALLOUT**
                         11-28-00
                           Date

Signature                          Location of Radiologic Facility

Original - Medical Record; Copy - Physician; Copy - Radiology
(This form may be replicated via WP)

Printed on Recycled Paper

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

March 4, 2004

Juken W. Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

RE:    *Gordon v. Gonzalez, et al.* No. 1:CV-01-0331

Dear Mr. Gordon:

I entered my provisional appearance today as your lawyer in the above-referenced matter for the purpose stated.  I am enclosing a copy of my praecipe to that effect for your records.  You should stop acting as your own lawyer at this time now that I have entered this appearance.  The Court will permit you to resume acting as your own lawyer if the Court decides to discontinue its appointment of me to your case in the future.

I have received your letters dated February 12 and March 2.  I intend to contact Mr. Tamburri pursuant to your suggestion.  In your March 2 letter, you wrote to request a copy of your medical records.  I have about fifteen pages of your medical records.  I believe that I obtained them from the public docket of documents already filed in your case.  I will show you what I have when we confer.  Please let me know whether your request involves those records or other records.

In your March 2 letter, you also wrote that you requested tape recordings.  I noted that you previously had filed a motion with the Court of Appeals for videotape of the incident in question.  On December 29, 2000, Regional Counsel Henry S. Sadowski wrote to inform you that the dining room tape of September 9, 2000 no longer exists.  Have you heard whether that allegation has changed since then?

On December 19, 2000, Dr. Reish, the orthopedic specialist, examined you.  Apparently, he dictated his findings onto a report signed by Dr. Chanmugam.  I am uncertain who typed the report.  Do you wish for us to request the dictation tape to confirm that the dictation matches the typed report?  Also, my copy of the one-page report ends in mid-sentence as if somebody redacted (i.e. deleted) the end of it.  Therefore, I definitely will need to obtain a complete copy of that report.

LPP Paralegal Rebekah Tessier and I intend to visit with you from approximately 1:00 – 3:00 p.m. on Thursday, March 25.  I will notify Counselor Hottenstein accordingly.

Sincerely,

David L. Glassman
Staff Attorney

encl.
cc:    Rebekah Tessier, LPP

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

May 3, 2004

Peter Heath, Office Administrator
Sun Orthopaedic Group
900 Buffalo Road
Lewisburg, PA 17837

RE:   *Juken W. Gordon v. N. Gonzalez, et al.*

Dear Mr. Heath:

Thank you for calling me on April 16 in response to my letter of April 12. This is to confirm the essence of our conversation. You informed me that Dr. Reish has retired. Indeed, I visited your Internet website this afternoon and confirmed that Dr. Reish is not pictured among your current medical staff.

Initially, we discussed the usage of audiotapes by Sun medical staff. You informed me that Sun Orthopaedic physicians customarily do not audiotape their consultations with patients. Rather, the physicians customarily speak into a microcassette recorder to dictate the medical history of the patients, observations, assessment, and prescribed course of treatment, if any. Sun physicians customarily do not wish for the patients to speak on the tape.

Next, we discussed the usual chain of custody of the audiotapes. You told me that Sun Orthopaedic physicians bring back their microcassette tapes after visiting several inmates in one day. The tapes are given to your in-house transcription secretaries to type up while listening to the dictation of the physicians. The transcription service then recycles the audiotapes for reusage at Sun Orthopaedic instead of saving their contents.

Third, we discussed the medical report dated December 19, 2000. You advised me that the mark on the bottom right of the report actually was the signed initials of Dr. Reish, indicating that he approved of that transcription of the report by the Sun Orthopaedic transcription team. Then, Sun Orthopaedic staff would have delivered all of the transcribed inmate medical reports to the penitentiary. Then, Dr. Chanmugam and his assistant, Mr. Pannell, review and sign off on what Sun Orthopaedic sends them.

You keep no inmate records in your computers because the Federal Bureau of Prisons requested you not to do so, citing "security" as their reason. Also, prison staff would keep the actual x-ray films of Mr. Gordon. Your office maintains no copies of the films.

Fourth, I asked why the last line of the report cut off in mid-sentence. You were unable to answer for sure. However, you guessed that maybe Dr. Reish lowered his voice, trailed off, lost his train of thought, was interrupted, or otherwise made it impossible for the typist to understand anything further.

You informed me that you would ask your clerical staff to search for any existing file on Mr. Gordon to determine whether a more complete report exists in your records. I look forward to hearing back from you when staff has completed their search. Thank you for your continued cooperation.

Sincerely,

David L. Glassman
Staff Attorney

cc:  Juken W. Gordon, #05373-088
c/o U.S.P. Allenwood

*[handwritten note, top right]* Mr. Gordon, I opened + re-sealed this letter and re-stapled it. Staff did not do it. I did. —J. Gleason

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

May 28, 2004

Juken W. Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

On May 15, I mailed you a copy of your deposition transcript.  On May 19, you wrote to ask me to send it to you.  Have you received it yet?

Yesterday, I sent a letter to ask Mr. Butler for your x-rays.  Also, I sent a request to Omega Diagnostic Imaging of Brooklyn to ask for your MRI from the 1997 car accident.

I spoke by telephone with Dr. Stanley Askin of suburban Philadelphia.  Dr. Askin is an orthopedic physician.  He is willing to examine your x-rays and MRI.

Dr. Askin told me that people usually sustain compression fractures after falling a great distance, such as falling out of a window, down steps, etcetera.  He told me that punches and kicks usually do not cause compression fractures.  Picture an accordion and pretend your body is an accordion being squeezed together too much.  That is the effect of a compression.

In his report, Dr. Reish stated that you told him that a Brooklyn doctor had told you in 1997 that you may have fractured your back in the car accident.  However, your radiology report dated 1998 showed no fracture.  When did you obtain a copy of that MRI report – before or after Dr. Reish visited with you?

My paralegal Karl called Dr. Reish at his house in suburban Lewisburg.  Dr. Reish refused to cooperate.  He no longer owns medical malpractice insurance and is afraid somebody might sue him.  Karl tried to tell him that nobody wants to sue him but Dr. Reish would not listen.  I am enclosing a copy of my report from Karl for your information.  Consequently, I might need to subpoena him to your trial since he isn't cooperating.

Also, I have tried to obtain any additional records from Peter Heath, the office manager where Dr. Reish used to work.  However, Mr. Heath has ignored my last couple requests to search for records.  Consequently, I might need to subpoena him as well.

Last month, Mr. Heath told me that they keep no records on inmates because the BOP asked them to keep no records for security reasons. Dr. Askin told me that Mr. Heath should not obey such a policy because that can open them up to malpractice claims due to sloppy recordkeeping practices.

Mr. Butler told me that he mistakenly wrote you in March that he has "surveillance" videotape from 2000. Now he claims that he meant to say that he only has the one hand-held video-camera tape. I will be meeting with him on Wednesday, June 3 to review documents and witness lists before trial.

I am enclosing for you a "Certification of Identity" form. Please sign and date it and mail it back to me in case I need it to obtain your x-rays or other medical records from Allenwood.

Sincerely,

David L. Glassman
Staff Attorney

enclosures

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

June 1, 2004

Juken W. Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

     I am asking for a trial continuance to allow me more time to obtain copies of your MRI and x-rays.  Sorry about that.  I am enclosing a copy for your records.  Consequently, I will not be meeting with the Judge on June 10 if she grants my request.

     Also, I am enclosing for you a copy of a letter dated May 25 from Lewisburg Supervisory Attorney Lori Cunningham concerning the BOP and Lewisburg policies and practices concerning the usage, retention, and destruction of videotapes.  I expect that you will find this information to be interesting.

Sincerely,

David L. Glassman
Staff Attorney

enclosures

Memo

To: David
Fr: Karl
Re: Juken Gordon
DT: May 26, 2004

After two days of telephone tag, I was able to talk with Dr. Bill Reish just before noon today.

I began the conversation by telling him that the inmate had no interest in suing him, that what LPP hoped to get from him was some clarification of his report on J. Gordon, 12/19/00, and that that would take 5-10 minutes at most.

Although friendly throughout our conversation, Dr. Reish said that he had retired in 2002 and currently had no malpractice insurance. I told him that this was not a malpractice matter, but he countered by saying that any judgement made by him could somehow or other in ways not clear to me involve malpractice.

I went around the block a couple of times to try to reassure him, but to no avail. He ended the conversation by saying, "That's the way medicine is in Pennsylvania these days, Karl."

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

June 19, 2004

Juken W. Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

Judge Rambo granted my trial continuance.  She continued the trial from July 5 until Tuesday, October 12 (day after Columbus Day holiday).  I am enclosing a copy of the order.

In Paragraph Three, I am troubled that she has noted the case to be "nonjury."  I am uncertain whether this notation is intended as some sort of sanction against me for requesting a continuance.  It wasn't like I waited until the last minute to request it.  You requested a jury in your complaint.  Furthermore, we know that this Judge previously had expressed her disbelief of your complaint when she granted summary judgment for the defendants before the Court of Appeals reversed her.  Therefore, she likely holds the same opinion about your case now unless Dr. Askin will testify in your favor.  I am enclosing for you a copy of my request for your x-rays and pre-incident medical records.  Would you be interested in a motion by me to reinstate your request for a jury?

Next, I am enclosing for you a copy of my reply letter to Ms. Cunningham.  Thank you for furnishing me with the procedural history concerning the prior representations to you about their retention of surveillance videotape.  I suppose Ms. Cunningham now will claim that she and Ms. Fiorenza had misunderstood the nature of the tape held in the custody of SIS as of 2001 as surveillance instead of hand-held.  Remember, in December 2000, Mr. Sadowski had informed you that the surveillance tape no longer existed.  Therefore, it was rather odd for Ms. Fiorenza to say otherwise in April 2001.  Also, Mr. Sadowski essentially is a supervisor of Ms. Cunningham.  It would be odd for Ms. Cunningham to say differently from her own supervisor unless she was confused.  We'll see what they say.

Finally, I have heard nothing back yet from the MRI people in Brooklyn.  I'll try to follow up.  They might need time to retrieve film from seven years ago.

Sincerely,

David L. Glassman
Staff Attorney

enclosures

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

June 25, 2004

Phone (570)-523-1104
Fax (570)-523-3944

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA 17887

Dear Mr. Gordon:

I am enclosing for you a copy of a letter dated June 24 from Mr. Butler in response to my letter dated June 19 concerning the videotapes. It is rather silly for him to allege that a hand-held video-camera also can produce "surveillance" videotape. He apparently has not watched the hand-held video-camera tape yet. Also, he may be unfamiliar with the common usage of hand-held video-cameras in prison for the limited purposes of taping existing incidents. Mr. Butler is young and apparently new to his job. Nevertheless, I believe his letter merely confirms that their position that the lawyers never had any hallway overhead "surveillance" videotape of your incident.

Also, I mistakenly omitted one of your reasons from my June 19 letter. You had written that you also wanted the overhead tapes to show how they carried you down the hallway <u>after</u> the assault in the office of the lieutenant. I merely had written that you wanted the tapes to show what happened <u>before</u> the assault. I stand corrected.

This morning, Allenwood Attorney John Wallace called me in response to my request for your x-rays plus additional medical records. Mr. Wallace agreed to my request. He told me that he will stop by the Prison Project to drop off the records after the medical staff there copies them for us. I know that they gave you some medical records but I wanted more than what they had given you. Allenwood has no machinery which can copy x-rays. However, Evangelical Hospital and a medical office in Lewisburg both have such machinery. Therefore, they will drop off your x-rays at one of those places for me to go to pay for copies to be made there. Then, I will try to set up an appointment with my expert.

On June 23, I finally spoke with "Anna" from Omega Diagnostics of Brooklyn. She said she would fax to me your 1997 Brooklyn MRI reports but she did not say when she would do it. I will call her again if she does not do it by the time Allenwood lets me copy your Year 2000 x-rays.

Sincerely,

David L. Glassman

David L. Glassman
Staff Attorney

enclosures

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

July 6, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA 17887

Dear Mr. Gordon:

On July 1, I picked up copies of your Year 2000 prison x-ray films. I now have them in my office.

On July 2, I called Omega and complained to "Grace," the supervisor for "Anna." This supervisor asked me to fax her another copy of my request. I am enclosing a copy of my July 2 fax to her. Anna then faxed me their MRI reports later on July 2. I am enclosing a copy of their reports for you. In their reports, Dr. Harold S. Parnes likewise made no mention about any fractures in 1997. Therefore, these reports corroborate your position that you suffered no fractures in the car accident.

Anna then stated that Omega allegedly no longer has your MRI films. I am enclosing a copy of her fax. You requested the address for Omega in your June 28 letter. Her fax has their current address. Note that they moved next door from their 1997 address at some point. I called Anna this afternoon to ask her to explain her fax to me. She told me that the former medical records custodians at Omega before her inadequately documented the releases of MRI films. Therefore, they only can guess that they had sent your films to the GEICO insurance company.

I asked Anna about copies since she does not have your original films. She explained that Omega purchased new MRI equipment when they either moved or changed management. Therefore, they no longer have the old MRI machine from which they could have run off copies of your MRI films from its computer memory storage.

Next, I asked whether they could have copied your old MRI films onto a computer disk. Anna said that was possible. However, they suggested that I try first to track down your original MRI films before asking them to search for any such disk. Accordingly, I am enclosing for you copies of my letters addressed to GEICO and to Dr. Sondra Pfeffer, the consultant retained by GEICO to defend against your auto accident claim.

Today, I received Defendants' First Set of Interrogatories along with their attached Authorization to Release Medical Records. I am enclosing two copies. You can keep one for yourself. Try your best to complete the other one and then send it back to me. I advise you to sign and date the Authorization for return to me as well. This Authorization will permit Mr. Butler to request any auto accident medical records not obtained already by me.

At the bottom of the second page of the Authorization, he accidentally left the name of some other case on which he is working. Apparently, he or his paralegal forgot to change that part of their form on their word processor before mailing it to me. I advise you to overlook it as an irrelevant technicality.

Sincerely,

David L. Glassman
Staff Attorney

enclosures

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

July 14, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

Last week, I forwarded to you an Authorization from Mr. Butler for you to sign, date, and return to me. At the bottom of the second page of the Authorization, he accidentally had left the name of some other case on which he is working. Apparently, he or his paralegal had forgotten to change that part of their form on their word processor before mailing it to me. I had advised you to overlook it as an irrelevant technicality. On July 12, he sent me a corrected second page. I merely will substitute it for the one which I had sent you after you return it to me.

Mr. Butler recently sent me a copy of your medical records from November 1997 until January 2001. I almost fell off my chair when I found the enclosed copy of the report of Doctor Reish. Note the differences. First, somebody forgot to copy the left side of the page. Second, somebody wrote, "Attention: Diane" followed by the Allenwood phone number at the top. Finally, the final paragraph is completed.

In my opinion, an Allenwood medical records custodian named "Diane" must have noticed that Doctors Reish and Chanmugam had signed an incomplete dictation report on you. She likely called the dictation secretary for Dr. Reish. The secretary then likely corrected the incomplete signed version by printing out a complete version out of her computer. The typed name of Doctor Reish also must have printed out after the final paragraph. His secretary then apparently delivered it to "Diane" at Allenwood without feeling a need to bother Dr. Reish with informing him of the prior technical error which would have made them all look bad.

Also, I am enclosing more of your medical records. After the incident, P.A. Peoria noted that correctional staff had changed their restraints on you. Indeed, you will recall that he was there during the hand-held videotaping of that procedure. Finally, Mr. Peoria noted that they allegedly removed the restraints at 4:20 p.m.

Apparently, September 9 was a Saturday. The next medical entry is Tuesday morning, September 12, 2000. Mr. Vic Factora, another Physician's Assistant [P.A.] examined your neck and back and referred you for the x-rays taken on Thursday September 14. X-ray Radiologist Doctor Thomas Payne found no evidence of fractures. On September 18, P.A. Martin Newton did note a "contusion" (i.e. a bruise) on your back.

On November 8, 2000, I see that the Regional Office transferred you to Allenwood. The next day, a lady P.A. Bennett-Meehan recommended you for x-rays. Due to your recent transfer, she may not have known that Lewisburg already had x-rayed you. On November 28, the Allenwood x-ray radiology doctor noted that you "failed to show for callout" for the second set of requested x-rays. On December 5, P.A. Pannell told you that he would get your Lewisburg x-rays and referred you to Dr. Reish for the December 19 visit.

Earlier this week, I sent two faxes to South Central Regional Jail to try to get your 1997 West Virginia prison medical records. I see that they sent you to Lewisburg as a holdover after Court in November 1997 on the way to FCI - Fort Dix. At that time, you told Lewisburg staff that you suffered from on and off back pain. During intake at Fort Dix, you told the medical staff that the back pain was caused by the car accident. Apparently, a dispute developed concerned whether you ever had tested positive for tuberculosis. In August 1998, you cut your toe on your bunk. In October 1998, they sent you to medical to be checked out, possibly on suspicion of being involved in a fight.

Finding no injuries on you, they nevertheless transferred you to FCI – Fairton the next day. I'm not sure what that was all about. However, I see that they transferred you to Lewisburg in February 1999. At Intake at Lewisburg, you told medical staff that you wear a back brace sometimes due to the car accident. On June 6, 1999, you twisted and sprained your knee while playing soccer. On December 17, 1999, you and another inmate bumped heads while trying to head a soccer ball. Therefore, your auto accident back pain did not prevent you from playing soccer over two years later.

Yesterday, I spoke with Dr. Sonya Pfeffer of New York City. She had reviewed your MRI in 1998 on behalf of Empire Stat Med Review. Doctor Pfeffer told me that she gave your MRI to GEICO, the insurance company for David Hanuman, the other driver. I called GEICO. A man told me that an insurance adjuster named Lisa Haskin has replaced Bob Winthrop since 1998. I left a phone message for Ms. Haskin to ask how to get your MRI. GEICO also told me that State Farm insured you and so maybe State Farm can help me get your records.

I just got off the phone with "Omar" from State Farm. He told me that your car injury claim was closed out as rejected in 1999. Therefore, I am sending State Farm a request for those records. He told me that their "archives" staff would have to see whether they have your MRI film.

Sincerely,

David L. Glassman
Staff Attorney

enclosures

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

July 14, 2004

State Farm Insurance Company
P.O. Box 905
Parsippany, NJ  07054

| | |
|---|---|
| Your Insured: | Juken (a.k.a. Guken) Gordon |
| D/A | 2/17/97 |
| Your Claim # | 32B390637 |
| Archived/Closed | 1999 |
| Requested Records | MRI, medical records, accident report |

To Whom It May Concern:

I am the attorney for the above-referenced auto accident personal injury claimant. In 2000, the claimant allegedly sustained a back injury here in Pennsylvania and has filed suit. Our defendants have claimed that the claimant suffered back injury during your claim, not during our claim. Therefore, they have made an issue of your archived records.

On June 2, our judge continued our trial so that we could obtain such additional records. I am enclosing a copy of our court order to that effect. In her first paragraph, the judge is hoping that I can complete my records search by July 30. Unfortunately, my client had not told me that you had insured him. Rather, I just found out yesterday from GEICO that State Farm insured my client.

Primarily, I am interested in obtaining MRI films made at Omega Diagnostic Imaging on March 20, 1997. Omega staff told me that they no longer have them and referred me to GEICO. I called GEICO and am awaiting a call back from GEICO Adjuster Lisa Haskin. Meanwhile, I wish to request you as well as to whether you have the MRI. My Pennsylvania expert witness wishes to examine it.

Additionally, I would be interested in obtaining all other medical records and accident reports associated with your claim. The defense expert here has stated that the Year 2000 x-rays of the claimant show an old compression fracture, possibly from 1997. We believe that your records will prove that he is mistaken.

Thank you for your anticipated cooperation.  I will pay your reasonable invoice for processing this request upon your request.

Sincerely,

David L. Glassman
Staff Attorney


enclosure
cc:     Juken Gordon

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

July 19, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA 17887

Dear Mr. Gordon:

Thank you for answering the defendants' interrogatories. I changed some of it but kept most of your answers the same. I am enclosing my typed draft for you to review and keep.

I am enclosing two copies of a "Declaration" for you to sign with respect to those interrogatories. Please sign and date one of them and return it to me. You can keep the other one for yourself if you want. Let me know if you disagree with anything in my draft of the responses. Otherwise, I will attach your signed Declaration to my draft and forward it to Mr. Butler.

Last week, I told you on the phone that the Charleston South Central Regional Jail medical records said nothing about your back. I will try to schedule a deposition of Dr. Reish next week at a law office here in Lewisburg. You will not be invited to attend. However, I can provide you with a copy of the transcript when it becomes available.

I left a telephone message with Mr. Hottenstein to schedule another legal visit with you. However, I am uncertain why you again want to meet.

Sincerely,

David L. Glassman
Staff Attorney

enclosures

# LEWISBURG PRISON PROJECT

P.O. Box 128
Lewisburg, PA  17837-0128

Phone (570) 523-1104
Fax (570) 523-3944

August 9, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

I am enclosing for you a copy of the expert report dated August 4 from Doctor Askin. Unfortunately, he believes that you sustained no fracture during the 2000 incident at U.S.P. – Lewisburg. Rather, he believes that Doctor Reish was referring to the 1997 car accident when Reish reported a "suggestion" of an old compression fracture on your 2000 x-ray.

On August 2, the storage contractor for State Farm sent me a bill of $64.16 for your records there as a condition of releasing them to me. I am enclosing a copy of the invoice for you. The Prison Project Administrator recently sent payment for these records and now await delivery to us.

In my opinion, we have insufficient medical evidence that the defendants fractured your back. Therefore, I intend to rely only upon your testimony and the Lewisburg medical records for your evidence at trial. I am willing to file a motion to reinstate your request for a jury trial.

Sincerely,

David L. Glassman
Staff Attorney

enclosure

# LEWISBURG PRISON PROJECT

P.O. Box 128
Lewisburg, PA  17837-0128

Phone (570) 523-1104
Fax (570) 523-3944

August 30, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

I am enclosing for you a copy of the August 25 court order filed by Judge Rambo. She struck your "briefs" from the record because the law only permits me to represent you if I remain your counsel of record. On August 20, I advised you by telephone not to file anything as long as I am your attorney. You then went and filed it anyway and the Court rejected it.

On August 17, you wrote to request me to submit your auto accident medical records into evidence at trial. I told you that I am willing to do so. You then went and unlawfully filed your request to subpoena Doctors Parnes and Pfeffer. I will not allow you to waste my time by asking me to drive out of state to depose doctors whose medical records already are admissible as evidence. I mailed you copies of the pertinent Federal Rules of Evidence. I am sorry if you misunderstand them.

You wrote that "we should have <u>no</u> problems" if I do what you ask of me. We will have problems because that is not how I practice law. I submit evidence which has merit. I remain in the process of scheduling a deposition of Doctor Reish even though I fully expect him to support my opinion that any possible compression fracture was older than one week old. Additionally, you continue to represent falsely to the Court that Reish examined x-rays which were three months old. We both know that the x-rays merely were one week old and then he discussed them with you three months later. Mr. Butler will rip into your testimony if you continue to go there.

No signed declaration has arrived here yet from you. Please let me know whether you will be returning it to me.

Thank you for attempting to educate me about the Rule 16 settlement negotiation provision. I have litigated several jury trials in the Middle District of Pennsylvania so I am aware of the local rules.

Sincerely,

David L. Glassman
Staff Attorney

enclosure

| EXHIBITS | DESCRIPTION |
|----------|-------------|
| P | **LETTER** dated August 9, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |
| Q | **LETTER** dated August 30, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon |

## CERTIFICATE OF SERVICE.

I, Juken W. Gordon, being duly sworn under the penalty of perjury 28 U.S.C. § 1746 and according to law, hereby depose and say:

1. I am the prisoner at USP Allenwood, White Deer, Pennsylvania.

2. On this <u>29th</u> day of September 2004 I placed one (1) copy of the <u>exhibits in support of plaintiff response to motion filed by counsel to withdraw his appearance as attorney for the plaintiff's</u> in an envelope addressed to:

> Clerk's Office
> U.S. District Court
> 228 Walnut Street
> Post Office Box 983
> Harrisburg, Pennsylvania 17108

> Michael J. Butler, Esq.
> U.S. Attorney's Office
> 228 Walnut Street, 2nd Floor
> Post Office Box 11754
> Harrisburg, Pennsylvania 17108

> And

> David L. Glassman, Esq.
> Lewisburg Prison Project Inc.
> Post Office Box 128
> Lewisburg, Pennsylvania 17837

3. I then affixed sufficient postage to cover first-class U.S. Mail delivery, and then give the package to prison officials here at USP Allenwood, to place in mail box reserved for inmate legal mail, on this <u>29th</u> day of September 2004.

> ss _____
> Juken Washington Gordon, Pro-se
> Reg. No. 05373-088
> Allenwood U.S.P.
> Post Office Box 3000
> White Deer, Pa. 17887

<u>1 of 2 page</u>

none

To: The Clerk's Office
U.S. District Court
228 Walnut Street
Post Office Box 983
Harrisburg, Pennsylvania 17108

Legal Mail