

UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF PENNSYLVANIA


JUKEN WASHINGTON GORDON,
        Planitiff,


     Vs.,                           CIVIL ACTION NO. 1:CV-01-0331
                                         (JUDGE RAMBO)


N. GONZALEZ, EL AL.,
        Defendants,           /

FILED
HARRISBURG

OCT 0 8 2004

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

EXHIBITS IN SUPPORT OF PLAINTIFF
PRE-TRIAL MOMORADUM.


Respectfully Submitted

By _____
Juken Washington Gordon, Pro-se
Reg No. 05373-088
Allenwood U.S.P.
Post Office Box 3000
White Deer, Pa. 17887-3000


Date: October 6, 2004

TABLE OF CONTENTS.

| EXHIBITS | DESCRIPTION |
|---|---|
| A | MRI's of the cervical spine medical reports of Dr. Harold S. Parnes, M.D. radiologist dated March 4, 1997 and March 20, 1997 |
| B | Cervical and Lumber MRI medical reports of Dr. Sondra J. Pfeffer, M.D. diplomate in radiology dated 31, 1998 |
| C | Physician assistant Mark Peoria, PA-C medical report's dated September 9, 2000 and mark as Defts 0016 and inmate injury assessment and follow-up medical report dated 09 Sep 2000 |
| D | Vicarthur R. Factora, physician assistant medical report's dated September 9, 2000 |
| E | Martin Newton, PA-C medical report's dated September 18, 2000 |
| F | Anthony Bussanich, M.D. medical report's dated October 24, 2000 |
| G | Two (2) copies of Dr. Williams G. Reish, M.D. medical report dated December 19, 2000. One mark as Defts 00102 at the top of that report of Dr. Reish the word "attention Diane" along with Allenwood telephone number. See Dr. Reish and Dr. Chanmugam, M.D. signed off on report dated 1/2/01 |
| H | Letter dated July 14, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon, plaintiff intend to introduce this July 14 letter into evidence at trial. |
| I | Momo to David from Karl Re: Juken Gordon DT: May 26, 2004 telephpne conversation between Karl paralegal and Dr. Bill Reish |
| J | One (1) copy of Thomas J. Payne, M.D. Medical reoprt dated September 19, 2000, on the same report J. Bennett Meehan recommended plaintiff for x-ray lumbar spine she wrote LBP from last institution-twisted back, stamp inmate failed to show for callout 11-28-00 plaintiff intend to introduce this report into evidence at trial |
| K | Letter dated September 9, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon, plaintiff intend to intorduce this September 9, 2004 letter into evidence at trial. |

-1-

| EXHIBITS | DESCRIPTION |
|----------|-------------|
| L | Letter dated September 22, 2004 from Mr. Glassman to the plaintiff Juken W. Gordon, plaintiff intend to intorduce this September 22, 2004 letter into evidence at trial |
| M | Juken W. Gordon#05373-088 administrative remedy BP-8 dated October 5, 2000 USP Lewisburg PA. To the coordinator, plaintiff intend to intorduce this BP-8 into evidence at trial |
| N | Juken W. Gordon, Reg. No. 05373-088 Admin 223296-F2 BP-9 administrative remedy response (now retired) warden Donald Romine dated 10/24/00, plaintiff intend to intorduce this BP-9 response into evidence at trial |
| O | Inmate request to staff member, Jake Mendez,warden USP Allenwood, from the plaintiff Juken W. Gordon#05373-088 dated 5/9/10 |
| P | J Bennett-Meehan, PA-C USP Allenwood medical report's of the plaintiff Juken W. Gordon dated 11-9-00 |

07/02/04  FRI 14:34 FAX 718 332 3236    Omega Diagnostic Imaging    @003

## ΩMEGA DIAGNOSTIC IMAGING, P.C.
### STATE OF THE ART OPEN AND NOISELESS MRI

HAROLD S. PARNES, M.D.
BOARD CERTIFIED
Diagnostic Radiology
Senior Member of the American Society of
Neuroradiology
Certificate of Added Qualification in
Neuroradiology

TEL: 718-332-1999
FAX: 718-332-3236

PATIENT: JUKEN GORDON

MARCH 4, 1997

REFERRING PHYSICIAN: DR. RAIA

### MRI OF THE CERVICAL SPINE:

An MRI of the cervical spine was performed on an open MRI unit.

Multiple sagittal relatively T1 and gradient echo images were obtained through the cervical spine as well as axial relatively T1 weighted images through the disc spaces.

Straightening as well as reversal of the normal curvature of the cervical spine was noted on the sagittal images.

The visualized signal intensity within the marrow spaces was normal on the various pulse sequences.

The craniovertebral junction was unremarkable.

Posterior bulging discs were identified at the C3-4, C4-5, and C5-6 levels.

The visualized neural elements were intact.

The paraspinal soft tissues and fascial planes were intact.

### IMPRESSION:

1. Straightening as well as reversal of the normal curvature of the cervical spine was noted on the sagittal images.
2. Posterior bulging discs were identified at the C3-4, C4-5, and C5-6 levels.
   Clinical correlation is suggested.

Thank you for the courtesy of this referral.

Harold S. Parnes, M.D.
Board Certified Diagnostic Radiology
Certificate of Added Qualification in Neuroradiology
Senior Member of the American Society of Neuroradiology

BROOKLYN MEDICAL SERVICES • 1515 VOORHIES AVENUE • BROOKLYN, NY 11235

Plaintiff Exhibit A

07/02/04  FRI 14:34 FAX 718 332 3236      Omega Diagnostic Imaging      @002

# ΩMEGA DIAGNOSTIC IMAGING, P.C.
## STATE OF THE ART OPEN AND NOISELESS MRI

HAROLD S. PARNES, M.D.
BOARD CERTIFIED
Diagnostic Radiology
Senior Member of the American Society of
Neuroradiology
Certificate of Added Qualification in
Neuroradiology

TEL: 718-332-1999
FAX: 718-332-3236

PATIENT: JUKEN GORDON

REFERRING PHYSICIAN: DR. RAIA

MARCH 20, 1997

## MRI OF THE LUMBAR SPINE:

An MRI of the lumbar spine was performed on an open MRI unit.

Multiple sagittal relatively T1 and gradient echo images were obtained through the lumbar spine as well as axial relatively T1 weighted images through the disc spaces.

Straightening of the normal curvature of the lumbar spine was noted on the sagittal images.

The visualized signal intensity within the marrow spaces was normal on the various pulse sequences.

The conus medullaris was unremarkable.

Posterior bulging discs were identified at the L2-3, L3-4, L4-5 and L5-S1 levels.

The paraspinal soft tissues and fascial planes were unremarkable.

## IMPRESSION:

1. Straightening of the normal curvature of the lumbar spine was seen on the sagittal images.
2. Posterior bulging discs as noted at the L2-3, L3-4, L4-5 and L5-S1 levels. Clinical correlation is suggested.

Thank you for the courtesy of this referral.

Harold S. Parnes, M.D.
Board Certified Diagnostic Radiology
Certificate of Added Qualification in Neuroradiology
Senior Member of the American Society of Neuroradiology

**EMPIRE STAT MED REVIEW, P.C.**

19 West 34th Street, Suite 423, New York, NY 10001-8199
(212) 947-6767 • (516) 933-8831 • (914) 332-4288

Offices: Manhattan, Queens, Brooklyn, Staten Island, Nassau, Suffolk,
Westchester, Rockland, Dutchess, Orange & Sullivan Counties

1451 West Cypress Creek Road, Ft. Lauderdale, FL 33309 • (954) 928-2884

SPECIALTIES
▲ Orthopedics ▲ Neurology ▲ Chiropractic ▲ Dentistry ▲ General Surgery ▲ Hematology ▲ Industrial Medicine ▲ Internal Medicine
▲ Oncology ▲ Radiology ▲ Otolaryngology ▲ Ophthalmology ▲ Plastic Reconstructive Surgery ▲ Cardiology ▲ Psychiatry
▲ Rehabilitation & Physical Medicine ▲ Pulmonology ▲ Urology ▲ Dermatology ▲ Vascular Surgery

July 31, 1998

GEICO
P.O. Box 177
Woodbury, NY  11797

Attn:  Bob Winthrop

RE :  Guken Gordon
D/A:  2/17/97
F/N:  009664340 0101 012
INS:  David Hanuman
REF:  140341

Dear Mr. Winthrop:

At your request, I have reviewed the cervical and lumbar MRI studies performed on the above-named person.

Both examinations were conducted by Omega Diagnostic Imaging, Brooklyn, New York.

## I: CERVICAL MRI:

Examination date is 3/4/97, 2 weeks following trauma.

Imaging sequences performed include T1 sagittal, T2 gradient sagittal, and T1 axial.

Normal cervical lordosis is maintained.  No fractures, malalignments, or contusions of the cervical vertebrae are noted.

There are no cervical disc herniations or pathologic disc bulges.

*Plaintiff Exhibit B*

RE:  Guken Gordon
July 31, 1998
Page 2                                               Dr. Pfeffer


The cervical spinal cord is of normal diameter and signal
intensity. There are no cord contusions or intrinsic cord lesions.

Normal facet joint alignment is maintained.  There is no
neuroforaminal or exiting cervical nerve root encroachment.

The paraspinal soft tissues are unremarkable.

## II: LUMBAR MRI:

Examination date is 3/20/97, just over 4 weeks following trauma.

Imaging sequences performed are T1 sagittal, T2 gradient sagittal,
and T1 axial.

Normal lumbar lordosis is maintained. No fractures, subluxations,
or contusions of the lumbar vertebrae are demonstrated.

There are no lumbar disc herniations or pathologic disc bulges.

A normal conus medullaris is visualized. There is no spinal
stenosis or intraspinal neoplasm.

Normal facet joint alignment is maintained.  There is no
neuroforaminal or exiting lumbar nerve root encroachment.

The paraspinal soft tissues are intact.

SUMMARY: These are normal cervical and lumbar MRI examinations.
No disc injuries are confirmed.

"I, Sondra J. Pfeffer, M.D., a physician authorized by law to
practice in the state of New York, am not a party to the above
entitled action, and hereby affirm that the foregoing statement is
true, under the penalty of perjury.

Dated, thirty-first day of July, 1998."

Sincerely yours,


Sondra J. Pfeffer, M.D.
Diplomate in Radiology
SP/b

Plntff Exhibit C

| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|------|---------------------------------------------------------------------------|
| 09SEP 2000 1153 | S: 32 Yo/b/M is seen in siu strip cell ⫫ immediate use of force. c/o kicked in head. "MY BACK HURTS. MY NECK HURTS 15 OF THEM JUMPED ON ME." on transfer? No meds. NKDA. No significant past medical Hx. |
| | O: Alert + Ambulatory w/o ww w/H in NAD. No pts, tremors, cough or obvious abnormalities Responds appropriately ⫧ normal speech Back: No deformities or tenderness Neck: No deformities or recent traumatic lesions Face: No deformities or recent traumatic lesions Hands: No deformities or recent traumatic lesions Thorax + Legs: No evidence of recent traumatic lesions Inmate in ankle + waist restraints |
| | A: Involved in recent immediate use of physical force |
| | P: Pt co: etiol + Tx understood. Ankle restraints loosened. BP-362 (00) generated. Pt/u prn via c/c |
| | Anthony Bussanich, M.D. [signature] 9/11/00    [signature]    Mark Peoria, PA-C |
| 09SEP 2000 1302 | Admin note: Inmate placed in soft ambulatory restraints. Restraints are not compromising the distal circulation. Inmate offered no resistance. Anthony Bussanich, M.D. [signature] 9/11/00   [signature]   Mark Peoria, PA-C |
| 09SEP 2000 1656 | Admin note: Released from restraints at 1620   [signature]   Mark Peoria, PA-C |
| | Anthony Bussanich, M.D. [signature] 9/11/00 |

Defts 0016

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**INMATE INJURY SSESSMENT AND FOLLOWUP**
(Medical)

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| USP LEW | GORDON JULEN | 05373-CEB |

| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
|---|---|---|
| UNASSIGNED | SHU STRIP CELL | 09SEP2000 1125 |

| 7. Where Did Injury Happen (Be specific as to location) | Work Related? ☐ Yes ☒ No | 8. Date and Time Reported for Treatment 09SEP2000 1153 |
|---|---|---|

**9. Subjective:** (Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)

c/o KICKED IN HEAD. MY BACK HURTS. MY NECK HURTS. 15 OF THEM

JUMPED ON ME."

INMATE IN WAIST RESTRAINTS BEHIND THE

BACK.                    Signature of Patient

**10. Objective:** (Observations or Findings from Examination)

X-Rays Taken _____    Not Indicated ☒
X-Ray Results

ALERT AND AMBULATORY. WELL DEVELOPED,
WELL NOURISHED. WELL HYDRATED. IN NO OBVIOUS DISTRESS. NO TICS, TREMORS,
COUGH. OR OBVIOUS ABNORMALITIES. NO EVIDENCE OF RECENT TRAUMATIC LESIONS.
BACK: NO DEFORMITY OR TENDERNESS TO PALPATION. FACE: NO DEFORMITIES OR
RECENT TRAUMATIC LESIONS. HANDS: NO DEFORMITIES OR EVIDENCE OF RECENT TRAUMA

**11. Assessment:** (Analysis of Facts Based on Subjective and Objective Data)

INVOLVED IN RECENT PHYSICAL ALTERCATION. MAY HAVE SUSTAINED BLUNT TRAUMA

c̄ CONTUSION.

**12. Plan:** (Diagnostic Procedures with Results, Treatment and Recommended Follow-up)

PATIENT CONDITION ETIOLOGY AND TREATMENT UNDERSTOOD. ANKLE RESTRAINTS

LOOSENED. ADVISED ON HOW TO OBTAIN A COPY OF THIS REPORT.

FOLLOW UP ON SICK CALL AS NEEDED.

**13. This Injury Required:**

☒ a. No Medical Attention

☐ b. Minor First Aid

☐ c. Hospitalization

☐ d. Other (explain)

_____

☐ e. Medically Unassigned

☐ f. Civilian First Aid Only

☐ g. Civilian Referred to Community Physician

Signature of Physician or Physician Assistant

Original – Medical File
Canary – Safety
Pink – Work Supervisor (Work related only)
Goldenrod – Correctional Supervisor

Self Carboned Form – If ballpoint pen is used, PRESS HARD

ATT 3

Plaintiff Exhibit C

5

NSN 7540-00-634-4176

Plaintiff Exhibit D

AUTHORIZED FOR LOCAL REPRODUCTION

**MEDICAL RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |
|---|---|
| 9/12/00 0740 | S: Inmate complained of back pain related started last week [illegible] following immediate "Use of Force." He stated he has no medication for pain at the time. At times he has neck pain. No Hx of PUD. NKA. |
| | O- No evidence of neck area swelling L-S area. No evidence of deformity/swelling |
| | A LBP / Neck pain |
| | P: (1) Medication Education was conducted (2) Discussed the effect of the medication (3) Pt understand the Tx regimen |
| | (4) Ibuprofen 800mg T cap PO tid PC x 7 days #21 (take with food) S-3 |
| | (5) Acetaminophen 325mg ii tab PO q 4-6 hr prn for pain #24 S-3 |
| | (6) X-ray of the L-S area (AP) and neck (AP) request sent |
| | (7) RTC if necessary |
| | Vicarthur R. Factora Physician Assistant |
| | Ahmed S. Abdel-Salam, M.D. |

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| USP LEW | | HSU | |
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

| REGISTER NO. | WARD NO. |
|---|---|
| 05373-084 | |

USP LEWISBURG
HEALTH SERVICES UNIT

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|------|------------------------------------------------------------------------|
| 9-18-00 0740 (SHU) | S: Requesting Rx refill of ibuprofen due to incident/use of force Trauma which he received during an immediate use of force altercation |

O: Few No apparent physical distress. Able to ambulate s̄ any obvious difficulty.

A: Post-traumatic LBP 2° to contusion

P: ① Ibuprofen 800 mg PO TID PRN x 5 d. (#15 Tabs)

② Follow on SIC PRN if Sx persist — He understands.

*[signature]* 9/18/0

Anthony Bussanich, M.D.

*[signature]* Off. Newton, PA-C
Martin Newton, PA-C
USP, Lewisburg

| 9/29/0 0840 | S: This 32 y/o male black who states the ibuprofen is ineffective for LBP/neck pain. He has no h/o PUD. |

O: Ambulatory, alert and oriented × 3. Ares resp distress-

A: - LBP
   neck pain

P: ① Medication Educate was conducted

② Discussed the effects of the medication

③ Pt understood the Tx regimen

④ Naproxen NaProsyn 500 mg 1 cap PO bid × 7 days #14 (to be with food)

STANDARD FORM 600 (REV. 6-97) BACK

Plaintiff Exhibit E

| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |
|------|---------------------------------------------------------------------------|
| 10/2/00 725 | *[illegible handwritten clinical notes]* |
| SHU 215 | *[illegible handwritten prescription notes]* N. Rodriguez-Miralles, MLP |
| 10/16/00 730 | S: Refill of Medication/s for *[illegible]*  O: Stable, Vital Signs: BP: _____ PR: _____  A: *[illegible]*  P: Refill of the following medications (See below)  Pt. Educ to follow previous instructions. |
| SHU 215 | *[illegible handwritten prescription]* N RODRIGUEZ-MIRALLES PA |
| 10/24/00 0731 S-222 | S: *[illegible]* requesting refill *[illegible]* for LBP  O: NAD @ this time  A: *[illegible]* LBP  P: ① Acetaminophen 325 III tabs *[illegible]* PRN #24  Res x 3  ② P.S *[illegible]*  ③ *[illegible] if needed.*  ④ pt *[illegible]*  Anthony Bussanich, M.D.  10/29/00                    Ivan Navarro, P.A. |

*Plaintiff Exhibit F*

GORDON - 05373-088
USP ALLENWOOD

12-19-00

Mr. Gordon is 32 and he comes because he has discomfort in his low back. His history first starts in 1997 before he got incarcerated. This would have been in January or February of 1997. He was involved in an automobile accident in New York. He was seen by a private physician and had back pain. He was started on therapy, started on medication, and before he could finish his treatment he was incarcerated. This would have been around April. He says his back was really sore and it hurt. He had an MRI at that time. He is not exactly sure what it showed, but he doesn't think it showed anything of significance. He thinks his doctor told him that he had a fracture. He said his pain never really went away since that time and kind of lingered. It then got worse. He can't really relate to an episode that made it worse. He says that his pain is more constant now than it was then, he has it a significant amount of time. It is not associated with any leg pain at all and he has no radicular symptoms. It is not made worse by coughing or sneezing.

Also of significance is that he says when he was in the Lewisburg Federal Penitentiary he was involved in a situation where he was taken to the office, had to put his hands up against the wall, and then had his feet taken out from underneath him. He fell at that time. He called the police. He had really no radicular symptoms or, in my estimation, significant change.

Physical examination reveals that his forward flexion is good. His lateral bending is good. Straight leg raising is negative. Deep tendon reflexes of the knee and ankle are normal. Sensory examination is okay. Extensor hallucis longus rates a 5. He has no sciatic notch tenderness.

He has two films, AP and lateral. He has some hypertrophic formation at the superior endplate of L3, suggestive of an old fracture or osteoarthritic change. There is also accompanying disc space narrowing between L2 and L3, with a small osteophyte maybe on the superior aspect of L4. There does not appear to be any spondylolysis or spondylolisthesis. I don't have any obliques, but I don't see it on the lateral.

I think his problem is residual compression fracture with a disc that is deteriorating in that level, not

Devan Shanmugam, M.D.

Plaintiff Exhibit 9

GORDON - 05373-088
ALLENWOOD

...-00

Gordon is 32 and he comes because he has discomfort in his low back. His history starts in 1997 before he got incarcerated. This would have been in January or ...ary of 1997. He was involved in an automobile accident in New York. He was ... by a private physician and had back pain. He was started on therapy, started on ...cation, and before he could finish his treatment he was incarcerated. This would ...been around April. He says his back was really sore and it hurt. He had an MRI at ...ime. He is not exactly sure what it showed, but he doesn't think it showed anything ...gnificance. He thinks his doctor told him that he had a fracture. He said his pain ...r really went away since that time and kind of lingered. It then got worse. He can't ...t relate to an episode that made it worse. He says that his pain is more constant now ...it was then, he has it a significant amount of time. It is not associated with any leg ...at all and he has no radicular symptoms. It is not made worse by coughing or ...ing.

...of significance is that he says when he was in the Lewisburg Federal Penitentiary he ...involved in a situation where he was taken to the office, had to put his hands up ...st the wall, and then had his feet taken out from underneath him. He fell at that ... He called the police. He had really no radicular symptoms or, in my estimation, ...ificant change.

...ical examination reveals that his forward flexion is good. His lateral bending is ... Straight leg raising is negative. Deep tendon reflexes of the knee and ankle are ...al. Sensory examination is okay. Extensor hallucis longus rates a 5. He has no ...ch notch tenderness.

...s two films, AP and lateral. He has some hypertrophic formation at the superior ...late of L3, suggestive of an old fracture or osteoarthritic change. There is also ...mpanying disc space narrowing between L2 and L3, with a small osteophyte maybe ...e superior aspect of L4. There does not appear to be any spondylolysis or ...yiolisthesis. I don't have any obliques, but I don't see it on the lateral.

...k his problem is residual compression fracture with a disc that is deteriorating in that ..., not herniated, but just deteriorating. I think he has degenerative disc disease that ...spond to an exercise and anti-inflammatory program. No MRI is indicated.


William G. Reish, M.D.

Plaintiff Exhibit 9

# LEWISBURG PRISON PROJECT

P.O. Box 128
LEWISBURG, PA 17837-0128

Phone (570)-523-1104
Fax (570)-523-3944

July 14, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

Last week, I forwarded to you an Authorization from Mr. Butler for you to sign, date, and return to me. At the bottom of the second page of the Authorization, he accidentally had left the name of some other case on which he is working. Apparently, he or his paralegal had forgotten to change that part of their form on their word processor before mailing it to me. I had advised you to overlook it as an irrelevant technicality. On July 12, he sent me a corrected second page. I merely will substitute it for the one which I had sent you after you return it to me.

Mr. Butler recently sent me a copy of your medical records from November 1997 until January 2001. I almost fell off my chair when I found the enclosed copy of the report of Doctor Reish. Note the differences. First, somebody forgot to copy the left side of the page. Second, somebody wrote, "Attention: Diane" followed by the Allenwood phone number at the top. Finally, the final paragraph is completed.

In my opinion, an Allenwood medical records custodian named "Diane" must have noticed that Doctors Reish and Chanmugam had signed an incomplete dictation report on you. She likely called the dictation secretary for Dr. Reish. The secretary then likely corrected the incomplete signed version by printing out a complete version out of her computer. The typed name of Doctor Reish also must have printed out after the final paragraph. His secretary then apparently delivered it to "Diane" at Allenwood without feeling a need to bother Dr. Reish with informing him of the prior technical error which would have made them all look bad.

Also, I am enclosing more of your medical records. After the incident, P.A. Peoria noted that correctional staff had changed their restraints on you. Indeed, you will recall that he was there during the hand-held videotaping of that procedure. Finally, Mr. Peoria noted that they allegedly removed the restraints at 4:20 p.m.

Apparently, September 9 was a Saturday. The next medical entry is Tuesday morning, September 12, 2000. Mr. Vic Factora, another Physician's Assistant [P.A.] examined your neck and back and referred you for the x-rays taken on Thursday September 14. X-ray Radiologist Doctor Thomas Payne found no evidence of fractures. On September 18, P.A. Martin Newton did note a "contusion" (i.e. a bruise) on your back.

Plaintiff Exhibit H

On November 8, 2000, I see that the Regional Office transferred you to Allenwood. The next day, a lady P.A. Bennett-Meehan recommended you for x-rays. Due to your recent transfer, she may not have known that Lewisburg already had x-rayed you. On November 28, the Allenwood x-ray radiology doctor noted that you "failed to show for callout" for the second set of requested x-rays. On December 5, P.A. Pannell told you that he would get your Lewisburg x-rays and referred you to Dr. Reish for the December 19 visit.

Earlier this week, I sent two faxes to South Central Regional Jail to try to get your 1997 West Virginia prison medical records. I see that they sent you to Lewisburg as a holdover after Court in November 1997 on the way to FCI - Fort Dix. At that time, you told Lewisburg staff that you suffered from on and off back pain. During intake at Fort Dix, you told the medical staff that the back pain was caused by the car accident. Apparently, a dispute developed concerned whether you ever had tested positive for tuberculosis. In August 1998, you cut your toe on your bunk. In October 1998, they sent you to medical to be checked out, possibly on suspicion of being involved in a fight.

Finding no injuries on you, they nevertheless transferred you to FCI – Fairton the next day. I'm not sure what that was all about. However, I see that they transferred you to Lewisburg in February 1999. At Intake at Lewisburg, you told medical staff that you wear a back brace sometimes due to the car accident. On June 6, 1999, you twisted and sprained your knee while playing soccer. On December 17, 1999, you and another inmate bumped heads while trying to head a soccer ball. Therefore, your auto accident back pain did not prevent you from playing soccer over two years later.

Yesterday, I spoke with Dr. Sonya Pfeffer of New York City. She had reviewed your MRI in 1998 on behalf of Empire Stat Med Review. Doctor Pfeffer told me that she gave your MRI to GEICO, the insurance company for David Hanuman, the other driver. I called GEICO. A man told me that an insurance adjuster named Lisa Haskin has replaced Bob Winthrop since 1998. I left a phone message for Ms. Haskin to ask how to get your MRI. GEICO also told me that State Farm insured you and so maybe State Farm can help me get your records.

I just got off the phone with "Omar" from State Farm. He told me that your car injury claim was closed out as rejected in 1999. Therefore, I am sending State Farm a request for those records. He told me that their "archives" staff would have to see whether they have your MRI film.

Sincerely,

David L. Glassman
David L. Glassman
Staff Attorney

enclosures

Memo

To: David
Fr: Karl
Re: Juken Gordon
DT: May 26, 2004

After two days of telephone tag, I was able to talk with Dr. Bill Reish just before noon today.

I began the conversation by telling him that the inmate had no interest in suing him, that what LPP hoped to get from him was some clarification of his report on J. Gordon, 12/19/00, and that that would take 5-10 minutes at most.

Although friendly throughout our conversation, Dr. Reish said that he had retired in 2002 and currently had no malpractice insurance. I told him that this was not a malpractice matter, but he countered by saying that any judgement made by him could somehow or other in ways not clear to me involve malpractice.

I went around the block a couple of times to try to reassure him, but to no avail. He ended the conversation by saying, "That's the way medicine is in Pennsylvania these days, Karl."

Plaintiff Exhibit I

BP-S622.060
AUG 96
RADIOLOGIC CONSULTATION REQUEST/REPORT CDFRM

## U.S. DEPARTMENT OF JUSTICE

### FEDERAL BUREAU OF PRISONS

| Patient Identification Name, Register Number, Institution | Age 32 | Sex M | EXAMINATION REQUESTED |
|---|---|---|---|

Gordon, Juken
#05373-088
USP Len

Pregnant: NO ☐ Yes ☐ No

Cervical Spine (neck)
AP
L-S Spine - AP

Requested by: Faton

Date Requested: 9/14/00

Specific reason(s) for request (Complaints and findings)
*[handwritten, partly illegible]* pain enter L-S spine, neck, mobile... immediate use of force

Date of examination: 9/14/00

Date of Report:

Date of Transcription:

Film # 9164

Radiologic Report

Cervical spine: AP and lateral views were obtained. The odontoid is obscured. As visualized the vertebral bodies maintain their normal height. The disc spaces are preserved. No destructive lesions are noted. There is no evidence of fracture.

LUMBAR SPINE: There is mild anterior wedging noted at L2. There are ~~hypertrophic changes present from L2 through L4. The disc spaces are maintained.~~ There is no evidence of an acute fracture.

Signature

Location of Radiologic Facility

Thomas J. Payne, III, M.D.
Board Certified Radiologist

Original - Medical Record; Copy - Physician; Copy - Radiology
(This form may be replicated via WP)

R & t: September 19, 2000
Ahmed S. Abdel Salam, M.D. 1/25/00

Printed on Recycled Paper

---

BP-S622.060
AUG 96
## RADIOLOGIC CONSULTATION REQUEST/REPORT CDFRM

## U.S. DEPARTMENT OF JUSTICE

### FEDERAL BUREAU OF PRISONS

| Patient Identification Name, Register Number, Institution | Age 32 | Sex M | EXAMINATION REQUESTED |
|---|---|---|---|

Gordon, Juken
05373-088

Pregnant: ☐ Yes ☒ No

Lumbar Spine

Requested by: J Bennett-Meehan

Date Requested: 11/9/00

Specific reason(s) for request (Complaints and findings)
H/o LBP from last institution — twisted Back

Date of examination:

Date of Report: INMATE FAILED TO SHOW FOR CALLOUT 11-28-00 Date

Date of Transcription:

Film #

Radiologic Report

Signature

Location of Radiologic Facility

Original - Medical Record; Copy - Physician; Copy - Radiology
(This form may be replicated via WP)

Plaintiff Exhibit I





# LEWISBURG PRISON PROJECT

P.O. Box 128
Lewisburg PA 17837

Ph: 570.523.1104 Fax: 570.523.3944
Email: prisonproject@dejazzd.com

Organized in 1973

September 9, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA 17887

Dear Mr. Gordon:

On September 7, my intern served a subpoena upon Mrs. Reish to give to Dr. Reish, her husband. Yesterday, Evan Black, private attorney for Dr. Reish, called me several times. Mr. Black informed me that Dr. Reish had plans to leave for China on September 14. I explained to Mr. Black that Dr. Reish had been uncooperative with our investigation to date and so I felt little compassion for the plans of his client. Mr. Black asked if I would drop the subpoena if Dr. Reish called me on the phone to cooperate and answer questions. I agreed.

Yesterday afternoon, Dr. Reish called and spoke with Prison Project paralegal Karl Patten and myself. Dr. Reish initially expressed surprise that someone had photocopied his report improperly but I explained that was what the prison staff gave us.

I asked what he meant when he said, at the end of the second paragraph of his report, that you had "no significant change." Reish replied that he believed you to have told him that the pain in your back felt about the same before and after the September 2000 incident with the guards.

Next, I asked Dr. Reish whether auto accidents and assaults can cause compression fractures and spinal bone spurs. He said that both auto accidents and assaults can cause compression fractures and bone spurs.

Concerning the fourth paragraph of his report, Dr. Reish said that "hypertrophic formation" means a bone spur. I asked him how long it takes for the body to grow a bone spur following a blow to the body. Dr. Reish replied that a bone spur can take anywhere from three months to twenty years to grow. I asked whether your bone spur could have appeared on the x-ray in just the five days from September 9 until September 14, 2000. Doctor Reish said that the body is unable to grow a bone spur that fast. Therefore, I asked Dr. Reish what he meant by an "old...residual" fracture. He told me that your auto accident could have caused the fracture.

Plaintiff Exhibit K

Doctor Reish told us that he believed you when you told him that your back hurts and that he has no doubt that your back hurts. He especially believes you because you have "disc space narrowing between L2 and L3." Dr. Reish said that most men your age have a wider disc space there than do you. However, he said that such narrowing takes a long time to "settle" to that point and that the disc space definitely took much longer than five days to narrow to the degree where it now causes you pain.

Dr. Reish remembered that John Pannell at Allenwood usually assisted him during inmate visits. Reish believes that Mr. Pannell correctly wrote down instructions for you to get a double mattress and have pain relief prescriptions.

Due to the cooperation of Dr. Reish, I cancelled the September 14 deposition pursuant to my promise with his attorney. In my opinion, Dr. Reish will be unable to testify that the guards caused any fracture to your back which may have appeared on the x-rays five days after the incident. Therefore, I have no intention of calling him as a trial witness.

During your last phone call, you demanded to know why your back hurts. I told you that I believe that Dr. Askin explained it in the "Assessments" portion of his report. Essentially, you have a bad back. Dr. Askin stated that "back pain is very common[.]" In medical terms, your spinal discs gradually have lost water and blood through the years. According to Dr. Reish, accidents and assaults can speed up that process and aggravate your pre-existing pain. The lost spinal disc water and blood leads to arthritis pain.

Mr. Butler and I still intend to meet in Lewisburg on Tuesday, September 14 to discuss whether they are willing to settle, exchange our potential trial exhibits, and work on our respective pretrial memoranda which must be filed by October 8.

Sincerely,

David L. Glassman
Staff Attorney

cc:    Karl Patten, LPP paralegal

# LEWISBURG PRISON PROJECT

P.O. Box 128
Lewisburg PA  17837

Ph: 570.523.1104  Fax:  570.523.3944
Email:  prisonproject@dejazzd.com

Organized in 1973

September 22, 2004

Juken Gordon, #05373-088
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Mr. Gordon:

On September 16, Judge Rambo re-listed your case for a jury, not judge, trial.  I am enclosing copies of her order and the Response of the defendants for your records.

On September 15, you wrote that you refused to stand by and allow Dr. Askin to "misrepresent the facts" about your injuries.  On September 16, Mr. Butler called to ask if he had my consent to exclude all reference to Doctor Askin from your trial since I had sent him no copy of the report of Dr. Askin.  I consented.  Therefore, neither Dr. Askin nor his report will be at your trial.

On September 11, you requested me to subpoena Dr. Reish for your trial.  I will not subpoena him to your trial.  I only subpoena people to trial who will help my client win a case.  Dr. Reish will hurt your case if we subpoena him to trial.  The law seldom permits a party to subpoena a "hostile" witness to testify.  You admit that you believe that Dr. Reish has lied several times.  I have no idea why you want to subpoena someone who you know will hurt your case.  The defendants are welcome to subpoena him if they think he will help their case.  Then, we can cross-examine him.  On rebuttal, you can testify if you want that he lied about what you told him.

Also, you requested a copy of the "telephone transcript" between Dr. Reish and I.  Neither the Bureau of Prisons nor the FBI monitors or taps into the Lewisburg Prison Project phones as far as I am aware.  I did not audiotape his phone call to me.  Likewise, I did not request his permission to tape his conversation with me.  Therefore, no transcript is available.  I regret that you are unable to trust my description of that conversation.

Mr. Butler has filed a motion *in limine* to exclude as irrelevant all reference to our allegation of surveillance videotape destruction.  I agree with you that this issue is relevant.  Therefore, I intend to file a brief in opposition to his motion and brief.

In the last paragraph of your September 11 letter, you wrote that the defendants "reaggravated" any 1997 back injury.  I agree with you on that point.  Unfortunately, on September 15, you wrote that you had "no bad back or back pain prior to" the assault.  I am uncertain as to what you mean by "prior to".

Plaintiff Exhibit L

I am unwilling to stand by and allow you to testify that you experienced no back pain in 1997 following the accident. You told too many New York doctors in 1997 that you experienced back pain according to their records in the State Farm file. I am willing to allow you to testify that you had no back pain from the date of your arrest until the assault.

On September 15, you requested me to send a copy of your BOP x-rays to Mrs. Gordon. The x-rays belong to the BOP. I have no authority from the BOP to send copies to Mrs. Gordon. At the conclusion of my representation, I will return my copy to the Allenwood medical department.

You also requested me to me to produce and send you a copy of the videotape. Likewise, the videotape copy belongs to the BOP. I have no authority to send you a copy. Additionally, I doubt that Allenwood staff will authorize you to possess a videotape even for court purposes.

You repeatedly have requested me to file your motion for a new MRI. I will file no such motion. I advise you to submit a request slip or BP-8 for the Allenwood medical staff to consider such a request. In a closing argument to the jury, we can argue that the medical staff should have conducted an MRI on your back to confirm the x-ray report of no fractures.

Finally, I believe that our attorney-client relationship has broken down and is irreparable. Clearly, we have different opinions concerning the merit of your theory of the case. I have told you that I have no objection to presentation of your testimony that the defendants assaulted you, especially since the Third Circuit ruled that you absolutely have that right. You were there in 2000 when this happened to you whereas I was not there. However, I am unwilling to present your theory that the defendants fractured your back. In my opinion, neither the auto accident nor the assault caused a fracture to your back.

Judge Rambo appointed me to investigate whether your case has merit. I believe that your case has merit. However, I believe that your theory of your case has no merit. For that reason, I intend to file a motion to withdraw as counsel from your case. She may deny my motion due to the number of prior trial continuances, our proximity to your current trial date, potential unfairness to you if you have inadequate opportunity to prepare your own case for trial without another continuance, and so forth. We will be stuck with each other if she denies my motion. I then will do what I can to present your case at trial in a professional manner without intent to prejudice you.

Sincerely,

David L. Glassman
Staff Attorney

enclosures

## ADMINISTRATIVE REMEDY.

**JUKEN W. GORDON # 05373-088   OCTOBER 5, 2000 U.S.P LEWISBURG PA**

This is a second written copy of my BP.8. The first one BP.8. was given to the S.I.S. Staff i saw the S.I.S. and sign a copy that he made from the computer, he told me inmate gordon that he was going to mail me inmate Gordon the orginal and also a copy that sign and have the S.I.A. Staff to come and see me inmate gordon about the incident. I inmate Gordon have not received a copy of the orginal BP.8. or the sign BP.8. from the S.I.S staff member. Just to note that the orginal(8) dated 9-10-2000. Also i have not see the S.I.A.

Inmate Gordon would like to explain to the coordinator that this is the exact quotation from my orginal BP.8. Lt. Gonzalez and Officer puckey refused to allowed inmate Gordon to go in the kitchen to eat. Lt. Gonzalez and Officer Puckey assault inmate Gordon in the Lt. Office. I was about to go in the kitchen i asked Lt. Gonzalez if i could go get something to aet? Lt. Gonzalez said no, i saw a spanish guy pass me and go to Lt. Gonzalez say something to Lt. Gonzalez and the spanish guy went in the kitchen.

I asked Lt. Gonzalez why he let the spanish guy in the kitchen, and i was here before him, and i asked you to let me go get something to aet. Lt. Gonzalez and Officer Puckey stated fuck you. These were their exact words you think you some tuff ass Nigga. We do what we want and let who we want in the kitchen. Lt. Gonzalez told officer Puckey to take me to the Lt's. Office when i went in the office, officer Puckey asked me to place my hands on the wall, which i did as soon as my hands were on the wall Officer Puckey swept my feet away from under me. I fell to the ground both Officer came down on me and started kicking and punching me all over my body, calling me Nigga saying we are going to kill you Nigga. I try to get up but i could not, one of the

Plaintiff Exhibit M

Officer  called for back up about (15) officer run in the Office jump in my back, lift me up and  take me out the office, down to the lock down unit. Holding me in the air the video camera will show everything the way i went to Lt's. Office and the way these officers took me to the lock down unit. This is the exact content of my orginal BP.8. Thank you for your time patience and concern in the above mention BP.8.

Dated: 10 - 5 - 2000

**THE ORGINAL BP.8. WAS HAND WRITTEN TO SIS STAFF.**

Your truly

Juken W. Gordon

c.c. File

NAME: Gordon, Juken
REG. NO.: 05373-088
ADMIN. NO.: 223296-F2

## ADMINISTRATIVE REMEDY RESPONSE

This is in response to your request for Administrative Remedy dated September 28, 2000, in which you allege a Correctional Officer and a Lieutenant would not allow you to eat in the dining room, verbally abused you in the corridor and then assaulted you in the Lieutenant's Office.

Accordingly, the Special Investigative Agent visited you in the Special Housing Unit at which time he took an affidavit from you listing these same allegations. These allegations were referred to the appropriate office for further direction and subsequently released to be investigated locally.

An investigation conducted by our Special Investigative Agent of the issues raised indicate there is no evidence to substantiate your complaints. Additionally, the staff members in question emphatically deny the allegations you have attributed to them.

Subsequently, this investigation has not revealed any evidence to substantiate the allegations you have submitted.

Based on the above information, the relief you request has been DENIED. If you are dissatisfied with this response, you may appeal to the: Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House - 7Th Floor, 2nd. & Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

_10/24/02_

Date

_Donald Romine_

Donald Romine, Warden

Plaintiff Exhibit N

HSA:
Take care of this, please.

Plaintiff Exhibit O

P.S. 5511.05
March 3, 1994
Attachment A, Page 1

BP-S148.70    INMATE REQUEST TO STAFF MEMBER    CDFRM
Oct. 1986
U.S. DEPARTMENT OF JUSTICE           Federal Bureau of Prisons

DATE **5/9/01**

TO: Mr. Jake Mandez, Warden
_____
(Name and Title of Officer)

SUBJECT: State completely but briefly the problem on which you desire assistance and what you think should be done (Give details).

I inmate Gordon respectfully request that you look into this matter, OF a "Back Brace" which was order by mr. I. Pannell, on 1/9/2001, I have gone to the hospital on many occasion, to receive this back brace to no avial. There is records to Prove that I made numerous attempts, and talk with the hospital administrative about this Problem about my back, which was damage by Prison officials. Thank you in advance for time effort and attention, in this matter.

(Use other side of page if more space is needed)

NAME: Juken Gordon                    No.: 05373-088

Work Assignment: Electrical Shop.    Unit: 1A

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)    DATE 5/24/01

You were issued your brace and as per our conversation the following day it fits.

_____
Staff Member

J. Justice

J. Justice AHSA

NSN 754(-00-634-4178                                                                                    600-108

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION *(Sign each entry)* |
|---|---|
| 11/9/00 0810 | S/ Pt c/o LBP since last institution. He was in He claims che fell & hurt his back - twisted He claims officers swept his feet out from under him |
| | O/ AT0x3 / Amb |
| | Neck - FROM - mild tenderness on ® side when turning head to Ⓛ ⊕ tenderness on palp of sternocleidomast muscle on ® |
| | Back - ⊕ tenderness on palp lumbar spin & paraspinal muscle on Ⓛ side in thoracic area |
| | A/ Muscle Strain |
| | P/ ① Ibuprofen 600mg ⊤ po tid x 10d (RF x 2) prn |
| | ② xray lumbar spine |
| | ③ CT8L prn |

CDR. R. SKERDA, RPH
USP A       OOD

Patient Medication Education Sheet(s)# 11/9/00

Dispensed with Medication  RS Kerda RPH

J. BENNETT-MEEHAN, PA-C
USP ALLENWOOD

Ord.Date  GORDON, JUKEN  WASHINGT  J. BENNE
11/09/00  05373-088
[barcode] TAKE 1 TABLET 3 TIMES DAILY WITH
FOOD AS NEEDED

Rx #
6064   IBUPROFEN 500 MG TAB   # 30

PATIENT'S IDENTIFICATION *(Use this space for Mechanical Imprint)*

Plaintiff Exhibit P

| RECORDS MAINTAINED AT: ▶ | | | |
|---|---|---|---|
| PATIENT'S NAME *(Last, First, Middle initial)* Gordon  Juken | | | SEX |
| RELATIONSHIP TO SPONSOR | STATUS | | RANK/GRADE |
| SPONSOR'S NAME | | ORGANIZATION | |
| DEPART., SERVICE | SSN/IDENTIFICATION NO. 05373-088 | | DATE OF BIRTH |

CHRONOLOGICAL RECORD OF MEDICAL CARE   STANDARD FORM 600 (REV. 5-84)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

## CERTIFICATE OF SERVICE

Pursuant to the principle of <u>Houston v. Lack,</u> 487 U.S. 266, 276 (1988).

I, Juken Washington Gordon, being duly sworn under the penalties of perjury 28 U.S.C. § 1746 and according to law, hereby depose and say:

1. I am the prisoner at USP Allenwood, White Deer, Pennsylvania.

2. On this  6th , day of October 2004 I placed one (1) copy of **Exhibits to the plaintiff pre-trial momorandum** in an envelope addressed to:

    Clerk's Office
    U.S. District Court
    228 Walnut Street
    Post Office Box 983
    Harrisburg, Pennsylvania 17108

      And

    Michael J. Butler, Esq.
    U.S. Attorney's Office
    228 Walnut Street, 2nd Floor
    Post Office Box 11754
    Harrisburg, Pennsylvania 17108

3. I then affixed sufficient postage to cover first-class U.S. Mail delivery, and then give the package to prison officials here at USP Allenwood, to place in mail box reserved for inmate's legal mail, on this  6th day October 2004.

     ss  *Juken Gordon*
     Juken Washington Gordon, Pro-se
     Reg. No. 05373-088
     Allenwood U.S.P.
     Post Office Box 3000
     White Deer, Pennsylvania 17887

-3-