NON-PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-4623

JUKEN WASHINGTON GORDON,
Appellant
v.

N. GONZALEZ, Lieutenant - FCI Lewisburg;
S. PUCKEY, SOS Officer; B. SHUMAN, SOS Officer;
J.A. CANDELORA, S.O. Officer; G. SHUCK,
SOS Officer; Dr. POERIA; USA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 01-cv-331
District Judge: The Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 10, 2007

Before: SMITH, NYGAARD, and HANSEN,[*] *Circuit Judges*

(Filed: April 30, 2007)

_____

OPINION
_____

---

[*]The Honorable David R. Hansen, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

SMITH, *Circuit Judge*.

The issue on this appeal is whether the District Court abused its discretion by refusing to appoint counsel for an indigent prisoner in a civil suit against several federal correctional officers. Gordon claims Eighth Amendment violations of excessive force resulting in cruel and unusual punishment. Gordon alleges that, during an altercation with these officers, several of them forced him to the ground, punched him, kicked him, and jumped on his back. Gordon suffered no visible physical injuries as a result of this alleged cruel and unusual punishment. The District Court had permitted the previous court-appointed counsel assigned to Gordon to withdraw. We will affirm the December 3, 2004 judgment because we conclude that the District Court properly exercised its discretion.

I.

Because we write primarily for the parties, we omit a discussion of facts not directly relevant to our disposition. Gordon alleges that he was assaulted by several correctional officers while he was an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, and that this assault purportedly resulted in severe back injuries. On February 22, 2001, he filed a pro se *Bivens* action, naming several correctional officers, a physician's assistant, and the United States. The *Bivens* action was based on the alleged excessive force used by the officers, which Gordon contends

violated his Eighth Amendment right to be free from cruel and unusual punishment.[1] On April 2, 2001, the Court granted Gordon's application to proceed *in forma pauperis*. On May 17, 2001, Gordon filed a motion seeking appointed counsel. The District Court denied the motion on June 28, 2001. The defendants moved to dismiss or, in the alternative, for summary judgment on June 5, 2001. On September 13, 2001, the District Court granted summary judgment on the excessive force claim. The District Court also dismissed other claims not relevant to this appeal. With respect to the excessive force claim, the District Court concluded that "Gordon's total lack of visible injuries is completely inconsistent with the events he describes." The District Court also stated that "the evidence presented by both defendants and the plaintiff suggest alternative explanations for the only injury identified by plaintiff. Gordon admitted to being in an automobile accident prior to his incarceration in which he was undergoing physical therapy for a back injury." As a result of having no visible injuries even though Gordon alleged that he was kicked, punched, and had other correctional officers jump on his back, the District Court granted summary judgment. Gordon appealed. After the District Court granted summary judgment, this Court held, in an unrelated matter, that de minimis injuries do not necessarily establish de minimis force to warrant a grant of summary judgment. *Smith v. Mensinger*, 293 F.3d 641, 648-49 (3d Cir. 2002). The Government then confessed error as a result of *Mensinger*, and this Court vacated the order and

---

[1] The defendants do not contest that an altercation occurred. They do disagree as to the amount of force used and Gordon's role in the incident.

remanded Gordon's case. *Gordon v. Gonzalez*, 84 Fed. Appx. 171 (3d Cir. 2003).

On January 14, 2004, Gordon filed another motion for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). The District Court appointed David Glassman to serve as Gordon's attorney. Glassman accepted the appointment provisionally on March 4, 2004, with the understanding that "the Court will entertain a motion for leave to withdraw [his] appearance if [his] investigation leads [him] to believe that the complaint lacks merit to proceed to trial." After engaging in discovery, investigating Gordon's back injury, and defending Gordon's deposition, Glassman filed a motion to withdraw as counsel, because Glassman concluded that Gordon's complaint "is unwarranted insofar as [Gordon] desires a litigation theory that the defendants caused his entire back problem." The District Court granted this motion five days after it was filed, on September 29, 2004. Gordon did not file his response to Glassman's withdrawal request until September 30, 2004, although this response is dated September 28, 2004. Gordon then filed a motion for reconsideration or the appointment of new counsel on October 3, 2004. The District Court denied this motion on October 13, 2004. The District Court stated that "Plaintiff is advised that he is not constitutionally entitled to an attorney in a civil case."
The District Court then set a trial date on the excessive force claim of November 1, 2004. Acting without counsel, Gordon achieved a deadlocked jury. The defendants received a verdict in their favor at a second trial. The District Court entered the judgment on

December 3, 2004, and Gordon filed an appeal nine days later.[2]

## II.

The District Court exercised jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's decision to deny counsel to an indigent civil litigant for abuse of discretion. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). A district court abuses its discretion if "its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (quotation and citation omitted).

## III.

Gordon appeals the District Court's decision to deny him appointed counsel after it allowed his prior attorney to withdraw. As we have stated, "[i]ndigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Id.* However, a district court does have discretionary authority to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "If the district court determines that the plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Whether a district court chooses to request counsel depends on several factors, including: 1) the plaintiff's ability to present his or her own case; 2) the difficulty of the particular legal issues; 3) the degree to which

---

[2]Gordon is ably represented by counsel on this appeal.

5

factual investigation will be necessary and the ability of the plaintiff to pursue investigation; 4) the plaintiff's capacity to retain counsel on his or her own behalf; 5) the extent to which a case is likely to turn on credibility determinations; and 6) whether the case will require testimony from expert witnesses.[3] *Montgomery*, 294 F.3d at 499 (citing *Tabron v. Grace*, 6 F.3d at 155-57). This list of factors is not exhaustive.[4] *Tabron*, 6 F.3d at 157.

Against the backdrop of these factors, we must keep in mind that a district court has "broad discretion" to appoint counsel, so that we should reverse a district court only when "its decision not to appoint counsel was *clearly* an abuse of discretion." *Id.* at 155 n.4 (emphasis added).

---

[3]On June 28, 2001, the District Court denied a motion by Gordon to have counsel appointed. The District Court applied the *Tabron* factors in this initial denial. The District Court order specifically stated that Gordon could file another motion for appointment of counsel. Gordon filed this second motion in early 2004. The District Court requested that Glassman be appointed, and six months later he resigned because Gordon sought to pursue a litigation theory unsupported by evidence. When the District Court informed Gordon in October 2004 that he had no constitutional right to counsel, it was correct. Although the District Court did not explicitly apply the *Tabron* factors again, there was no need to do so inasmuch as the same judge decided the same type of motion filed by the same plaintiff in the same case.

[4]Two other factors a district court should consider are: 1) The Court's willingness to aid the indigent party in presenting his or her case by, for example, explaining how to introduce and move for the admission of evidence; and 2) The supply of attorneys willing to take § 1915(e) requests in the geographic area of the litigation. We would not be surprised to find that the availability of appointed counsel in non-urban areas is lower than in metropolitan areas. District courts should be cognizant of the scarcity of appointed counsel in § 1915(e) cases.

Even assuming without deciding that Gordon's claim had merit in fact and law,[5] several of the *Tabron* factors militate against appointment of counsel. At the time of Gordon's motion for a new counsel, several signals pointed to his ability to present his case. The numerous pro se filings in this case alone evince Gordon's familiarity with the legal system. *See id*. at 156 (prior litigation experience may be considered under this factor). Gordon's ability to present his own case was buttressed by the work put in by his previous court-appointed lawyer prior to withdrawal. This situation can be contrasted with *Montgomery*, where we stated that the plaintiff's "unfamiliarity with complex discovery rules ... hindered his attempts to investigate the facts underlying his case." 294 F.3d at 502. We also note that, while not in any way dispositive, Gordon achieved a deadlocked jury in his first trial. Gordon did make some mistakes at trial. He did not, for example, submit proposed voir dire questions or proposed jury instructions and made other mistakes at trial. In light of the thin merits of Gordon's claim, however, this factor does not weigh in Gordon's favor. *See Tabron*, 6 F.3d at 156 (substantial legal claims should be given closer consideration by courts for appointment of counsel).

The legal issues in this case were not difficult. Gordon was required to show that

---

[5]If Gordon's allegations are true, his claim may have had merit. However, the evidence clearly points to the fact that Gordon suffered no back injury as a result of the purported assault, and that his actual back injury predated the alleged assault by several years. For example, x-rays of Gordon's back taken less than a week after the alleged incident revealed a bone spur that would have taken much longer than a week to form. Because the first jury deadlocked, however, we hesitate to conclude that Gordon's claim had *no* merit in fact.

the correctional officers unjustifiably attacked him in a manner that constituted excessive force. As conceded by the plaintiff, "[t]he legal issues in this case are not facially complicated, but they required careful presentation." Gordon asserts, though, that he had difficulty in authenticating documents, getting documents admitted without the court's help, and submitting documents *in camera*. The plaintiff's counsel here states that "[f]rom Gordon's perspective, this case presented overwhelmingly complex legal issues." Gordon's reading of this factor seems to suggest that it will always weigh in the indigent party's favor unless that party is a trial lawyer. We hesitate to extend *Tabron* and its progeny in such a manner. *Cf. Montgomery*, 294 F.3d at 502 (civil rights claim alleging deliberate indifference to a prisoner's serious medical needs raises sufficiently complex legal issues). Medical evidence pointed to a pre-existing back injury. Several defendants directly contradicted Gordon's version of the story. However, Gordon's testimony, if credited by the jury, might have established his claim. It is in this sense that the legal issues in this case were uncomplicated. *See Parham*, 126 F.3d at 459 ("While the ultimate issue may be comprehensible, courts must still look to the proof going towards the ultimate issue and the discovery issues involved.").

Gordon concedes that the case did not require any further factual development because discovery was completed prior to the withdrawal of Gordon's appointed counsel.

There is no evidence in the record that Gordon could have afforded to retain counsel on his own behalf. We question the independent weight of this factor, though, as indigent litigants by definition will almost always be able to satisfy it. A district court

nonetheless has broad discretion under 28 U.S.C. § 1915(e)(1) to request appointment of counsel for indigent litigants in civil cases.

With respect to the credibility determination factor, "[w]hile the case ultimately may have relied upon credibility, it is difficult to imagine a case that does not. Thus, when considering this factor, courts should determine whether the case was solely a swearing contest." *Id*. at 460 (indigent litigants in cases that will be resolved purely on credibility determinations are more likely to need appointed counsel). This case was not a swearing contest. Although this case did pit Gordon's claims that officers punched, kicked, and stepped on him against correctional officers who testified otherwise, the overwhelming evidence points to the conclusion that Gordon suffered no actual injury as a result of this alleged assault.

Finally, we briefly mention the possible need for expert witness testimony regarding Gordon's back injury. When Gordon did have appointed counsel, a doctor did review Gordon's medical records. This doctor concluded that Gordon's back condition did not substantively change as a result of the alleged assault. And, again, x-ray evidence showed that Gordon's bone spur existed prior to the alleged assault. This factor also weighs against appointment of counsel. We refuse to conclude that a district court abused its discretion when all of the evidence in the case points against any added value of expert testimony at trial.

IV.

For these reasons, we will affirm the District Court's December 3, 2004 judgment.[4]

---

[4]We note that the Middle District of Pennsylvania has explicitly adopted the Pennsylvania Rules of Professional Conduct, except for Rule 3.10. *See* Middle District L.R. 83.23.2; FED. R. CIV. P. 83. These Rules apply to all proceedings in its jurisdiction unless specifically provided to the contrary or not applicable in the context. L.R. 1.1. Pennsylvania Rule 3.3(b) states that "[a] lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Pennsylvania Rule 1.6(b) states that "[a] lawyer shall reveal such information if necessary to comply with the duties stated in Rule 3.3." Pennsylvania Rule 1.6(c)(3) states that "[a] lawyer may reveal [confidential] information to the extent that the lawyer reasonably believes necessary: (3) to prevent, mitigate or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used." With these rules in mind, we find no error in Glassman's disclosure to the Court of his reasons to withdraw, and we conclude that this disclosure did not taint the District Court's decision not to appoint another attorney for Gordon.